FAIRBANKS *v*, AMOSKEAG NAT. BANK *et al.*

*(Circuit Court, D. New Hampshire.  April 24, 1889.*

1. BANKRUPTCY—COMPOSITION—FRAUD—LIMITATION OF ACTIONS.
    Rev. St. § 5057, provides that a suit between an assignee in bankruptcy and a person claiming an adverse interest concerning the bankrupt's property is barred in two years after the cause of action accrued.  Act June 22, 1874, provides that the time during which a composition between the bankrupt and creditors shall be in force shall be excluded in the computation.  A bankrupt and defendant made a fraudulent agreement to procure a composition with the creditors, which was procured and confirmed by the court, and in pursuance thereof an order to the assignee to convey the property to defendant was procured, and the property was conveyed accordingly.  The compromise was afterwards set aside.  *Held* that, where less than two years remained

after deducting the time the compromise was in force from the period elapsing between the date of the fraudulent agreement and the filing of a bill by the assignee to recover the property, such bill was not barred.

**2.** SAME.

A bankrupt and defendant, one of his creditors, agreed that, in consideration that defendant should procure a composition which the bankrupt had offered to the creditors, the bankrupt would pay defendant a specified sum in addition to all disbursements. Defendant thereupon bought certain large claims, paying a larger sum for them than the percentage provided for in the composition would amount to, and voted such claims in favor of the composition as attorney for the original holders of them, concealing the assignment, and, the composition having been thus procured and confirmed, received a transfer of the bankrupt estate. *Held,* that the agreement and composition were fraudulent, and the assignee could recover the property.

**3.** SAME.

But where defendant has a mortgage, and has been obliged to pay a mechanic's lien on certain property, and there is a balance due him thereon, he may be allowed to retain the rents received therefrom, and account for the same on the balance due.

**4.** SAME.

Defendant may be allowed to retain dividends received by him.

In Equity. On appeal from district court.

Bill by Alfred G. Fairbanks, assignee in bankruptcy, against the Amoskeag National Bank and David B. Varney. Two others were originally joined as defendants, but as to them the bill was dismissed. The following opinion was given in the district court:

"CLARK, J. On and before the 13th of July, 1875, Cyrus Dunn and John T. Harris were copartners under the name of Dunn, Harris & Co. On that day —the 13th of July, 1875—they were adjudged bankrupts by this court, upon their own petition, and on the 3d of August, 1875, the complainant was appointed their assignee, and the assets of the bankrupts were conveyed to him by the register, both of the copartnership and of the individual copartners. The Amoskeag National Bank was at that time a creditor of both Dunn, Harris & Co. and of Dunn, and Varney was one of the directors of the bank. Fairbanks accepted the trust, and proceeded to realize upon the assets, collecting a considerable sum upon the personal and holding the real estate undisposed of. On the 4th day of October, 1875, Dunn made an offer of compromise to the creditors of Dunn, Harris & Co., 15 per cent., and to the creditors of Dunn, 20 per cent. The offer of compromise was accepted and duly confirmed by the requisite number and amount of creditors, and was ordered to be recorded by the court on the 31st day of December, 1875. Dunn procured the assistance of Varney in carrying out his offer of compromise, and, after the creditors had been paid, such as would receive their dividends, he, Varney, petitioned the court, with the assent of Dunn, that the property of the bankrupts in the possession of the assignee should be conveyed to the said Varney. And by order of the court, the assignee, on the 28th day of April, 1876, deeded all the estate of the bankrupts, real and personal, in his possession to said Varney. On the 6th day of April, 1880, upon the petition of D. C. Whittemore, one of the creditors of said Dunn, who had never accepted said compromise, the order of court confirming said compromise was reversed, and declared null and void.

"The bill of complaint in this case was filed October 31, 1881, and it prays that Varney and the Amoskeag National Bank, to whom Varney had conveyed the property, and whose agent he was alleged to be, may be ordered to reconvey the said property, or its proceeds, to the assignee, or such other

person as the court might appoint, for the reason that said bank and said Varney and others, conspiring and contriving to defraud and cheat the creditors of said Dunn, entered into a fraudulent agreement with said Dunn, that in consideration that the said bank, through said Varney, should bring about the said compòsition, the said Dunn should pay to said Varney the sum of six thousand dollars for said bank, in addition to all disbursements made by said Varney in the course of said business. And in pursuance of said agreement the said Varney and said bank and others bought up and paid for certain large claims a much larger sum than the percentage mentioned in said resolution of compromise; and so being the owner of said claims voted on behalf of said creditors as their attorney, for said resolution of compromise, concealing from the other creditors of said bankrupts the fact of such assignment, which was unknown to the complainant and other creditors of the said bankrupt for a long time after the 31st day of December, 1875. But no time was stated in the bill when said fact became known to the complainant, or when the fraud was discovered. The answer denied the fraud and concealment, and alleged that the complainant, at the time he made the deed to said Varney, April 28, 1876, well knew of said purchase, and that in many instances, said Varney had paid sums exceeding the composition voted; and that he had full notice and knowledge of the agreement between said Dunn and said Varney, and insisted that said assignee, ' having waited so long before instituting any proceedings for the recovery of such property, is barred by the statute of limitations respecting suits by or against assignees, the bill not having been filed within two years of the time the cause of action accrued,' and praying that they may have some benefit of this objection, as if the same were pleaded in bar of this suit. Proofs were offered tending to show the acts alleged to be fraudulent, but there was no proof or evidence of concealment on the part of the defendants, further than that some of the transactions between the respondents and Dunn and creditors were entered into when the complainant was not present, and of which it did not appear he had notice. It did not otherwise appear that these transactions were not known to the complainant at the date of the deed of April 26, 1876, nor, if not known to him at that time, when they became known to him. The complainant offered no proof upon that point; but to the objection set up by the respondents in their answer, that this suit is barred by the statute of limitations respecting suits by or against assignees, (section 5057, Rev. St. 2d Ed.,) the complainant replied in his argument at the hearing: (1) That this proceeding is not such a suit as falls within the purview of that statute; and (2) that the cause of action did not accrue until within two years of the bringing of the action, to-wit, until the fraud was discovered by the complainant; nor until the compromise was set aside on the petition of Whittemore, April 6, 1880.

"The language of the statute is: 'No suit, either in law or equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest, touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee.' Rev. St. § 5057. With the requirement of this statute this suit seems fully and literally to comply. It is a suit in equity; it is between an assignee in bankruptcy and persons claiming an adverse interest to property transferable to such assignee. The prayer of the bill is: 'That the bank and the defendants may be required to convey to said assignee all the property of said Dunn;' that is, all the property of said Dunn which came to the hands of the assignee, transferred or conveyed to the respondent by the deed of April 28, 1876, and which the respondents now claim and seek to hold. So far the proceeding answers to the provisions of the law, and the only remaining question is, when did the cause of action accrue? Evidently at the time the deed of the com-

plainant to the defendants was made, if the fraud had been or was then known. The fraud, if any, was committed before the deed was executed; but the cause of action could not be said to have existed before that time, because the complainant up to that time had the property in his own hands and possession, and could have maintained no suit, at law or equity against the defendants for its recovery. If the complainant had known of the fraud before the deed of April 28, 1876, had been executed, he probably could have prevented the transfer of the property to the defendants by making known the fraud to the court, and, if he did not know of the fraud at that time, there would seem to be no objection to his recovering it back as soon as he discovered the fraud, after the deed was made. In *Bailey* v. *Glover*, 21 Wall. 342, it was held that the clause 'limiting the commencement of actions by and against the assignee to two years after the right of action accrues, applies to all judicial contests between the assignee and any person whose interest is adverse to his.' It was also held in the same case that, when the action is intended to obtain redress against a fraud concealed by the party or which from its nature remains secret, the bar does not commence to run until the fraud is discovered. So in *Moore* v. *Greene*, 19 How. 69. But in this case there is no allegation .in the bill, nor is there any evidence in the case, when the fraud was discovered, so that the court can determine whether the action was seasonably brought, or when the bar commenced to run. In *Stearns* v. *Page*, 7 How. 819, it was held, 'especially must there be distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see whether, by the exercise of ordinary diligence, the discovery might not have been before made.' Same doctrine was held in *Moore* v. *Greene*, above cited, 'to enable the defendants to meet the fraud and the time of its discovery.' In *Harwood* v. *Railroad Co.*, 17 Wall. 78, it was held that, when 'a bill is filed five years after the judicial proceedings which it is sought to set aside have been completed, the cause of so considerable a delay should be specifically set out, and, if ignorance of the fraud is relied on to excuse the delay, it should be shown specifically when knowledge of the fraud was first obtained.' In this case there is neither allegation nor proof when the fraud was discovered, and a knowledge of it obtained, nor is there any allegation or evidence that the complainant did not know of the alleged fraudulent acts of the defendants at the time of the making of the deed by the complainant to the defendants, April 28, 1876, and, if the case rested here, the bill would have been dismissed.

"But there is another provision of the bankrupt act which must be considered, which controls the foregoing consideration. This is a case where the bankrupt offered a composition which was accepted by the creditors and ordered to be recorded, and was afterwards set aside by the court; and the statute of June 22, 1874, provides that in such a case 'the time during which such composition shall have been in force shall not be computed in calculating periods of time prescribed by the bankrupt act.' 1 Supp. Rev. St. 74. The compromise was ordered to be recorded December 31, 1875. It was set aside April 6, 1881; in force four years, three months, and six days. The assignee was appointed August 3, 1875, and the bill of complaint was filed October 31, 1881,—a period of six years, two months, and twenty-eight days. The alleged fraudulent acts of the respondents were not done until the 11th day of December, 1875, the date of the agreement between Dunn and Varney, and, after reckoning from this day to the date of filing the bill in this case, there is a period of five years, nine months, and twenty days. Deducting four years, three months, and six days,—the time the compromise was in force,—and there remains one year, six months, and fourteen days to be reckoned against the assignee in computing the two years' limitation fixed by section 5057 of the Revised Statutes. And so the bill of complaint having been brought within the lim-

itation required by the statute, it was not necessary for the complainant to offer proof of the concealment of the fraud to avoid the limitation.

"We come now to the consideration of the fraudulent acts alleged to have been committed by the defendants; because, if they have committed no fraud they cannot be disturbed in the possession of the property which was transferred to them by order of the court, notwithstanding the compromise has been set aside and annulled. The acts complained of in the bill are, that the said bank and Varney, conspiring and contriving to defraud and cheat the creditors of said Dunn, entered into a fraudulent agreement with said Dunn, that in consideration that the bank, through said Varney, should bring about the composition which Dunn had offered, the said Dunn would pay to said Varney the sum of six thousand dollars for said bank, in addition to all disbursements made by said Varney in the course of said business, and that in pursuance of said agreement said Varney and said bank and others bought up and paid for certain large claims, a much larger sum than the percentage mentioned in the resolution of compromise; and so, being the owner of said claims, voted in behalf of said creditors as their attorney for said resolution of compromise, concealing from the other creditors of said bankrupts the fact of such assignment. The acts thus alleged were substantially proved by the evidence. There was such an agreement between Dunn and Varney in writing. Varney purchased certain claims, or procured them to be purchased, paying more for them than was offered by Dunn in his offer of compromise, and voted upon them as attorney for the claimants, thus aiding to carry the compromise, acting in this as the agent of the bank, which furnished him the money in whole or in part, and afterwards securing a transfer of the bankrupts' property, and conveying it to the bank. That such acts were fraudulent there can be no doubt. They influenced the bankruptcy proceedings. They probably secured the passage of the compromise resolution. They secured to one creditor more than to another a greater percentage on his debt without the knowledge of such others. They prevented an equal distribution of the bankrupts' assets, giving to some of the creditors more than was offered by the compromise. And they tended to prevent a considerable portion of Dunn's assets from being applied to the payment of his debts. *Cookinham* v. *Morgan*, 5 N. B. R. 16; *McLean* v. *Bank*, 3 McLean, 587; *Webb* v. *Sachs*, 15 N. B. R. 168; *In re Sawyer*, 14 N. B. R. 241; *Ex parte Morris*, 12 N. B. R. 170; *Bean* v. *Brookmire*, 7 N. B. R. 568; *Bean* v. *Amsink*, 8 N. B. R. 228. The compromise being thus affected by fraud, and the conveyances of the assets of the bankrupts to Varney by the assignee, and by Varney to the bank, having been induced by such fraudulent compromise, must be set aside, and the respondents ordered to reconvey said assets to the assignee.

"The master reports that the bank received from the property of Dunn $5,302.75, but in this he has included $277.42, received from rents from the Concord-Street property of which they had a mortgage and a claim for a mechanic's lien, which they had been obliged to pay, and on which a balance was due the bank. This sum of $277.42, I am inclined to think the bank may retain and account for on the balance due them on the property. This should be deducted from the $5,302.75, leaving $5,025.33, which sum should be paid to the assignee, and a decree may be entered accordingly. Sundry dividends were paid to the bank by the assignee, which I am inclined to think, so far as now appears, should be retained by them. It does not appear that the money paid to the bank by Harris was paid by the assignee, or that the note passed from the assignee to the bank, though it does appear that the note belonged to Dunn's estate. The sum of $530.00, paid to the bank on this note, may remain in the hands of the bank, to be accounted for with other questions which will undoubtedly arise in the settlement of the estate of the bankrupts by the assignee."

Defendants appeal. For opinions on motion for writ of *mandamus* and to dismiss appeal, and on motion to quash writs of *mandamus* and *certiorari*, see 32 Fed. Rep. 572, 30 Fed. Rep. 602.

*H. G. Wood*, for complainant.

*C. R. Morrison* and *H. H. Hun*, for defendants.

COLT, J. This case comes up upon appeal from the district court. The record is the same as was before that court. From a careful examination of the record and the briefs of counsel, I am entirely satisfied with the correctness of the conclusions reached by the district judge. Whether intended or not, the evidence shows beyond question the fraudulent character of the compromise effected by these defendants. It is also equally clear that this cause is not barred by the statute of limitations. Agreeing, as I do, with the reasoning and conclusions of the district court, it becomes unnecessary for me to do more than direct that the decree of the district court be affirmed, and the appeal dismissed, and it is so ordered.