**TEXAS HOTEL SECURITIES CORPORA-TION v. WACO DEVELOPMENT CO.** [*]

**No. 8192.**

Circuit Court of Appeals, Fifth Circuit.

Dec. 28, 1936.

Rehearing Denied Jan. 30, 1937.

See, also, In re Waco Development Co. (D.C.) 15 F.Supp. 478.

Robert Allen Ritchie and Nathaniel Jacks, both of Dallas, Tex., and E. Y. Boynton and Wm. E. Terrell, both of Waco, Tex., for appellants.

J. D. Williamson, of Waco, Tex., and Claude P. Berry, of St. Louis, Mo., for appellee.

Before SIBLEY and HUTCHESON, Circuit Judges, and STRUM, District Judge.

SIBLEY, Circuit Judge.

Waco Development Company on May 17, 1935, filed a petition for reorganization under Bankruptcy Act, § 77B (11 U. S.C.A. § 207), on the ground that it was unable to meet its debts as they matured. Besides a little cash it owned only the Roosevelt Hotel in Waco, Tex., and its equipment, put at a value depreciated to $602,361 but now fixed at $725,000; and its indebtedness besides taxes was an issue of negotiable gold notes or bonds secured by a mortgage on the hotel of $413,000 principal. Notes for $465,000 were originally issued, but $52,000 which matured prior to November 15, 1932, had been paid. $61,000 maturing since were in default. All of the notes are to mature by November 15, 1937. A plan of reorganization was put forth in the petition, of which it is enough for present purposes to say that it involves a lease of the hotel to Central Texas Hotel Company, the establishment of a sinking fund from the income of the hotel, the reduction of interest on the unpaid notes from 6 per cent. to 5 per cent. for five years beginning retroactively November 15, 1934, and a postponement of their maturity until November 15, 1944. This plan, after slight modification, was approved by the District Judge. Its approval turned on the acceptance of it by the class of gold note holders. More than a third of the gold notes, to wit, $149,100, were held by Texas Hotel Securities Corporation. That company, joined by the holder of $12,500 other notes, totaling 39 per cent. of the whole, dissented from the plan. The holders of 8 per cent. failed to appear and vote. The holders of $221,-000, or 53 per cent. of the whole, voted for the plan. The judge held that Texas Hotel Securities Corporation, although entitled to prove its notes and to participate in the results of the plan, had acquired them with the intent of preventing the debtor's reorganization, and could not vote on the plan, and that its notes were not to be counted as in the class entitled to vote, so that the $221,000 of notes which were voted for the plan were two-thirds of the whole voting class; but if otherwise that the judge had the right to confirm the plan as fairly and equitably providing protection to the nonassenting minority under section 77B (b) (5) (d) of the act. (11 U.S.C.A. § 207 (b) (5) (d).

Texas Hotel Securities Corporation, joined by the other dissenting noteholder, has taken an appeal as of right under section 25 (a), as amended by Act May 27, 1926, § 10, 44 Stat. 665 (11 U.S.C.A. § 48 (a), and also applied for one in the discretion of this court under section 24 (b), as amended by Act May 27, 1926, § 9, 44 Stat. 664 (11 U.S.C.A. § 47 (b). The appellee, Waco Development Company, moves to dismiss the former and opposes the grant of the latter. The judgment appealed from decrees, among other things, "that Texas Hotel Securities Corporation is not entitled on its said bonds and its said claim of $149,100 for the purpose of voting to be considered a creditor whose claim has been allowed, or to vote or use its said claim as an allowed claim in the consideration and determination of the amount of each class of claims which has accepted said plan of reorganization; but the Texas Hotel Securities Corporation is entitled to participate on its bonds in the sum of $149,100 under the plan of reorganization on the same basis as other creditors of the same class"; and it decrees approval and confirmation of the plan. The decree is in the main one approving a plan of reorganization, and as such is not appealable as of right but only in the discretion of this court for revision in matters of law under section 24 (b). Meyer v. Kenmore Hotel Co., 297 U.S. 160, 56 S.Ct. 405, 80 L.Ed. 557. In so far as it deals with the claim of Texas Hotel Securities Corporation, proof of which in due form had been filed pursuant to the order of the court made when the debtor's petition was approved, it recognizes the claim as true and correct for beneficial purposes, but holds that it cannot be counted or voted in determining the acceptance of the plan. This is not a judgment "rejecting a claim of $500 or over"

fully appealable as of right under section 25 (a). It allows the claim but denies it the consequential right to vote on a plan. A ruling as to whether a creditor may vote his claim is incidental to the approval of the plan rather than to the allowance of the claim, and is to be reviewed in connection with the action taken on the plan. When a claim is offered to be proven its right to vote in some subsequent procedure is not the question, but only whether the claimant is actually a creditor, for how much, and with what if any securities, and the like. In ordinary bankruptcy the right to vote the claim for a trustee, or on accepting a composition, or on any other question in creditors' meeting, would be considered only when those matters were reached for action. So under section 77B the proof of the claim as to ownership, amount, and nature should first be made, and after its allowance and classification its right to vote if challenged should be considered in connection with the approval of the plan. The right to vote on a plan is not a fixed incident of every allowed claim, but exists only when its class is affected by the plan and may vary as the plan is changed or modified. Determination of its voting rights depends upon the terms of the particular plan and is incidental to its approval or rejection, and is to be reviewed therewith by appeal under section 24 (b) rather than as the allowance or rejection of the claim under section 25 (a). The claimants here in addition to filing proofs of their claim intervened to assert them and to oppose the plan. The interventions were wholly unnecessary. The self-styled intervenors were creditors entitled to have their claims allowed and thereby to become full parties to the bankruptcy proceeding and to take any proper action as such. The interventions do not change the nature of the questions presented or of the rulings made, nor alter the remedy on appeal. The appeal under section 25 (a) is dismissed, and that under section 24 (b) is allowed.

The denial of votability to the claim of Texas Hotel Securities Corporation is based on the purpose with which it acquired its bonds. The special master who heard the witnesses testify found that the purpose of Hilton, who owns and controls the Securities Corporation, was "to exercise sufficient influence and control in the adoption of any plan for the reorganization of Waco Development Company to have the plan formulated along lines that would afford him an opportunity to recoup certain losses which the Hilton interests had sustained in the Waco-Hilton Hotel (the Roosevelt Hotel); that it was the intention of Hilton and his interests in purchasing said bonds to have the bonds accorded the same treatment as other bonds and in addition thereto, if possible, to profit in some way as above set out; that the total cost to intervenor (the Securities Corporation) of notes now held by it was at least their par value." On exception to this finding the judge found that the Securities Corporation had legal title and that value was paid for the notes, but "with the intention and for the purpose of using same to prevent and thwart the effort of the debtor Waco Development Company from accomplishing approval and confirmation, of any plan of reorganization under section 77B * * * by voting such block of 33½% of outstanding notes against any plan proposed and submitted by the debtor." The substituted finding is attacked here as unsupported by evidence. The direct evidence of intention is given by Hilton, who conducted the negotiations, and by the president and vice president of the Securities Company, who participated. They all testify that several months before the filing of this petition, in order to recoup in some way a loss that they felt had been unjustly visited upon the Hilton interests in connection with the hotel, they set about buying at least a third of these mortgage notes in view of a possible reorganization proceeding, and three days before the petition was filed, in co-operation with a capitalist, Greenwood, they bought the notes in controversy at prices ranging from 70 to 85, taking them over from Greenwood a few days later, and beside reimbursing Greenwood paying him as had been agreed an old debt of $25,000 which he claimed. They all say that they did not intend to block any and all plans, but hoped to force one that would give them again the operation of the hotel or otherwise reestablish an interest that they felt they justly had in the property. The circumstances do not authorize a different conclusion. They are these: Waco Development Company in 1928 deeded to Waco-Hilton Hotel Company (wholly owned by Texas Hotel Securities Corporation) a lot valued at $180,000. The Hotel Company built and furnished the Roosevelt Hotel with $465,000 raised on the mortgage gold notes here in controversy and about

$200,000 additional. The hotel but not the furniture was deeded back to Waco Development Company, which assumed the gold notes, and the Hotel Company took a ninety-nine year lease on the hotel. It made further extensive improvements not required by the lease. All went well till in 1932 patronage fell off due to the business depression and the lease got in default and a cancellation was threatened. The lessee sought relief in the state court under a Texas moratorium statute on March 20, 1934. A hearing was appointed for April 9th, on which day, upon a cross-petition, the lease was decreed canceled and an arrearage of $17,000 in rents established, with a foreclosure against the furniture. This swift justice was affirmed, Waco-Hilton Hotel Co. v. Waco Development Co. (Tex.Civ.App.) 75 S.W.(2d) 968, and in consequence the lessee lost all to the Waco Development Company. Subsequent negotiations by Hilton for reinstatement of the lease or other recognition were rebuffed. But Waco Development Company having bought everything in, found it necessary to reorganize, and after delay in proceedings before the Federal Securities Commission and in efforts to get a federal loan the present bankruptcy proceeding was begun. The plan of refinancing put forward by Waco Development Company before the Securities Commission and before the court included a long lease of the hotel, the hope being that better times would enable it to carry and pay the bonds as before 1932. It would be possible and not unlawful for the Hilton interests to be again the lessee. Hilton considered that Waco Development Company had been unjustly enriched, although within the law, by the misfortunes of his hotel company, and may have thought as he says that some other recognition of his moral right might be agreed on and approved by the court. We do not think it can be held in the face of the testimony of himself and his associates that the intent was wholly obstructive, as found by the Judge, rather than hopeful of a lawful advantage to be openly gained, as found by the master. The evidence requires the finding made by the master, and it was error in matter of law to overrule it.

Therefore Texas Hotel Securities Corporation, which felt that it had a moral right in the hotel properties or perhaps an equity arising out of oppression, in contemplation of this proceeding bought up over one-third of a class of claims in order to have a veto on plans of reorganization; not, however, in malice or to embarrass justice, or surreptitiously to sell its vote, but to force recognition of a supposed right. We are of opinion that this does not authorize the disregarding of these notes as a part of the class to be affected. A debtor corporation, whether insolvent or merely unable to meet its debts as they mature, is not guaranteed by section 77B a right to a reorganization. It is given only the right to present a plan to its creditors and stockholders for their acceptance, with the advantage that the prescribed majorities in the classes affected can control unwilling minorities. No legal wrong is done the debtor if it cannot secure the required consents and is held to its original engagements, for that is but leaving to the creditors their original rights. Nor is it unlawful to transfer claims in anticipation of bankruptcy or during bankruptcy, and the transfer usually does not deprive the claim of any of its incidents. Shropshire v. Bush, 204 U.S. 186, 27 S.Ct. 178, 51 L.Ed. 436; In re Comstock (D.C.) 154 F. 747; In re Page Motor Car Co. (D. C.) 251 F. 318. Section 77B does not prohibit such transfer, nor put transferred claims in a peculiar class. The provision here important, paragraph (e) (1), § 77B (11 U.S.C.A. § 207 (e) (1), is: "A plan of reorganization shall not be confirmed until it has been accepted in writing * * * by or on behalf of creditors holding two thirds in amount of the claims of each class whose claims have been allowed and would be affected by the plan." The voting class embraces holders of allowed claims without requirement as to when or how they became holders. Allowance is, as we have held, a matter to be previously settled, subject to an appeal as of right; and the term "accepted" involves only the idea of consent and no duty of impartiality of decision as to the fairness of the plan. There is only a question of its acceptability to the creditor, and not of the justice or validity of his reasons. But the act fairly implies some cleanness of motive on the part of the affirmative majority since their will is not to be imposed on the minority unless the judge finds both that the plan is fair and equitable, and under paragraph (f) (6), § 77B (11 U.S.C.A. § 207 (f) (6), that "the plan and its acceptance are in good faith and have not been made or procured by any means or promises forbidden by this title." Also in

paragraph (e) (1), § 77B (11 U.S.C.A. § 207 (e), is this requirement: "With such acceptance there shall be filed a statement * * * showing what, if any, claims and shares of stock have been purchased or transferred by those accepting the plan after the commencement or in contemplation of the proceeding, and the circumstances of such purchase or transfer." These provisions indicate that the information is to be considered by the judge in testing the fairness and good faith of the accepting majority, but they do not say that any creditor is to be deprived of his right to accept or reject, or that the non-acceptors are to be investigated at all. The provision at the end of paragraph (b), § 77B (11 U.S.C.A. § 207 (b) about scrutinizing depository agreements and the like and limiting claims filed by committees and agents to the actual consideration paid for them has no application to the outright owner of notes, and would not limit the present claim because par value was paid. The precedents in common bankruptcy where transferred claims have been denied a vote involved securing affirmative action by bad faith votes, as in procuring the election of a trustee or the acceptance of a composition. In re Weintrob (D.C.) 240 F. 532; Fairbanks v. Amoskeag Nat. Bank (C.C.) 38 F. 630; In re Sawyer, 21 Fed.Cas. p. 559, No. 12,395. Contrast Ex parte Jewett, 13 Fed.Cas. p. 580, No. 7,303. Section 77B in order to impose a plan on dissenters requires an acceptance by two-thirds in amount of the affected class of creditors. Less than two-thirds cannot become two-thirds because some of the dissenters may be badly disposed.

The act, paragraph (b) (5), § 77B (11 U.S.C.A. § 207 (b) (5), however, does recognize an exception to the requirement that two-thirds in amount of an affected class of creditors shall accept the plan when the plan "provide[s] adequate protection for the realization by them of the value of their interests, claims, or liens." Several means by which such protection is afforded are mentioned which do not obtain here, and finally paragraph (b) (5) (d), § 77B (11 U.S.C.A. § 207 (b) (5) (d), "By such method as will in the opinion of the judge, under and consistent with the circumstances of the particular case, equitably and fairly provide such protection." The decree under review is finally rested on this provision. We do not construe it to authorize the judge to approve any plan which he thinks fair and equitable. If this were intended, the statute could have been made much simpler and shorter. In this case he thought it fair and equitable to reduce the interest, even retroactively, and to extend for seven years or more the maturity of this mortgage debt. But if there had been a single unwilling mortgagee, that plan could not have been constitutionally imposed. Louisville Joint Stock Bank v. Radford, 295 U. S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A. L.R. 1106. No more could it be on an unwilling class of mortgagees. It is the consent of the specified majority that by a sort of democratic rule is made to be a consent for all which enables this act to control the will of dissenting minorities. The judge is not given the power, if it could be done, to substitute his judgment for the acceptance of a class of mortgage creditors. The words "such protection" refer back to the words "adequate protection for the realization by them of the value of their interests, claims, or liens." Realization implies that what was in prospect has come to hand. Payment of the face of the claim in cash is the perfect realization of a money chose in action. But realization of the value of a claim or interest may be adequately secured by sale or appraisal of the thing which gives it value with the proportionate part of the value paid, or else the thing may be segregated and divided out in kind, or else left unaffected for the holder of the claim to proceed according to his unchanged contract. Such are the instances specially mentioned as adequate in subparagraphs (a), (b), and (c), par. (b) (5), § 77B (11 U.S.C.A. § 207 (b) (5) (a–c). There may be other cases of special circumstances in which adequate protection for realization of value can be worked out as contemplated by subparagraph (d). But when as here the property mortgaged is found to be worth nearly double the mortgage debt and the debtor is found to be solvent, it cannot be said that realization is adequately provided by scaling down the past and future interest and postponing the maturity of the principal for seven years. Compare Louisville Joint Stock Bank v. Radford, supra, 295 U. S. 555, at pages 594, 597, 55 S.Ct. 854, 865, 866, 79 L.Ed. 1593, 97 A.L.R. 1106. Thus interpreting subparagraph (d), par. (b) (5), § 77B (11 U.S.C.A. § 207 (b) (5) (d), and refusing to apply it in this case, we have no need to consider whether it would be constitutional if interpreted and applied

as in the District Court. Tennessee Publishing Co. v. American National Bank, 299 U.S. 18, 57 S.Ct. 85, 81 L.Ed. ——.

We are therefore of opinion that the claim of Texas Hotel Securities Corporation has been allowed, and cannot be excluded for voting purposes from the class of gold noteholders because of any fact that has been established; that two-thirds in amount of the allowed claims in that class have not accepted the plan proposed; and that the plan does not provide such adequate protection for the realization of the value of claims of that class as will warrant dispensing with their consent.

The judgment confirming the plan is reversed for further proceedings according to law and not inconsistent with this opinion.