## ROBERTS v. BOARD OF PUBLIC IN-STRUCTION FOR BROWARD COUNTY, FLA.

No. 9596.

Circuit Court of Appeals, Fifth Circuit.

Feb. 19, 1941.

Rehearing Denied March 20, 1941.

---

Joseph P. Lea, Jr., and Stuart B. Warren, both of St. Petersburg, Fla., and J. Blanc Monroe and Monte M. Lemann, both of New Orleans, La., for appellant.

Julian E. Ross and John D. Kennedy, both of Fort Lauderdale, Fla., for appellee.

Before FOSTER, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

When appellant was here before,[1] it was, as sole appellant, from an order overruling the objections that he and Ed Wright & Company had made, that appellee was without right to file the petition it had filed on June 16, 1939, for composition of its debts, and to proceed under Sections 81–83 of the Bankruptcy Act, 11 U.S.C.A. §§ 401–403. That appeal failing the matter proceeded over his objections and those of Wright & Company, that the plan was invalid, to an interlocutory decree overruling their objections, confirming the plan as valid and ordering it put into effect and he is here again as sole appellant.

On this appeal, complaint is indeed made of the findings and order appealed from on other grounds: (1) That the contract with and provisions for refunding agent's fees and costs was illegal, and (2) that there was error in sustaining the plea of res judicata and disallowing part of appellant's claim. But the real ground of the appeal and the point on which its success or failure must turn is that the plan of composition was unfair, inequitable, and unfairly discriminatory, and therefore invalid, as to him in making provision for the refunding of bonds, and none for the refunding of coupons, since appellant owns no bonds but only coupons.

Appellee recognizes this and meets appellant on the threshhold of the appeal, insisting that he is not the real owner of the coupons he claims to own, but that Wright & Company, which has not appealed, is. In the alternative, appellee insists that if appellant does own them, he took them after and subject to the plan of composition, and for the purpose of artificially creating in the interest of Wright & Company, a situation which would make the plan appear inequitable and defeat it, and that having voluntarily put himself in this position, the supposed equities of his situation as owner of coupons alone, are non-existent. In support of this position, it points to the finding of the Master, approved by the court, that not appellant but Wright & Company was the real owner of the coupons on which appellant made claim, and that if not, the evidence shows that appellant acquired them, not as a bona fide holder, but after the plan of composition had been adopted with full knowledge of the provisions and conditions thereof.[2]

---

[1] 5 Cir., 112 F.2d 459.

[2] The Master found, and his finding is sustained by the evidence; that no creditor but Wright & Company and Roberts, whose proofs of claim were filed on August 12, 1939, Wright on bonds, coupons and interest, Roberts on coupons clipped from several of Wright's bonds, have objected to the plan; that creditors holding 74% of indebtedness have affirmatively agreed that the plan was fair; that Wright & Company, though filing objections, did not appear personally or through attorney to offer testimony or otherwise; that Roberts was represented at the hearing by attorney but was not personally present and did not testify. He further found, "His attorney takes the position that he does not hold any bonds but only interest coupons, and under the Plan of Composition he will recover nothing for his interest coupons.

He insists that interest coupons are of the same dignity as bonds, and that a holder of interest coupons belongs to the same class of creditors as a holder of bonds, and that any plan which provides a different method of refunding obligations of the same class, is unfair.

"If said creditor was a bona fide holder of said coupons for value and had demeaned himself as such, he would have a better standing before the Court. The evidence produced at the hearing conclusively shows that the creditor, Albert Roberts, Jr., has for years been the Vice-President of Ed. C. Wright & Co., the other objecting creditor, who under Claims Nos. 52 and 53 filed proof of claim on the bonds from which the coupons were detached. The evidence shows that on April 20, 1938, the Board of Public Instruction for Broward County, Florida, had a special meeting with the said Ed.

These findings show, that appellant was the vice-president of Wright & Company; that Wright & Company owned a large block of bonds and particularly several which have been adjudged invalid; that before and since the plan of composition was formulated it has opposed the efforts of appellee to refund its bonding debt unless these bonds are recognized; that the coupons appellant claims and filed claim as owner of were clipped from Wright & Company bonds; that it was appellee who as vice-president of Wright & Company conducted the conferences on its behalf with appellee and as late as May and June, 1939, with the refunding agent of appellee, and refused on its behalf to join the refunding plan; and that at that time he made no claim on his own account, and none that the plan would discriminate against the holders of coupons only. These findings and the record show, that of all the holders of appellee's bonds only Wright & Company filed opposition to the plan; that no person before the filing of the plan, and only appellant since its filing, has claimed to own coupons only; and that throughout all of the proceedings appellant has consistently followed the practice of joining Wright & Company in objecting to and opposing the proceedings below and of appealing by himself from rulings adverse to these objections.

Appellant on his part insists, that the allowance of his claim is a judgment that he is the owner of the coupons he claims; that the finding made by the Master and approved by the district judge, that not he but Wright & Company is the owner of the coupons, cannot affect this judgment; that the finding, that if he is the owner he became so after the formulation of and knowledge of the plan and for the purpose of defeating it if he could, is not sustained by the evidence; and that if it is, it is immaterial because nothing in the act or in the controlling principles of law forbids such acquisition.

Relying upon the holding in Re Comstock, D.C., 154 F. 747, and our case, Texas Hotel Securities Corporation v. Waco Development Company, 5 Cir., 87 F.2d 395, 399, that it is not unlawful to transfer claims in anticipation of bankruptcy or during bankruptcy, and that the fact that the claims were purchased for the purpose of defeating the proceeding, cannot deprive their holder of his legal right to vote them against the composition, appellant insists, that those cases are controlling here.

We cannot at all agree with appellant. We think it quite plain that this record admits of no other conclusion than that appellant's position of ownership of the coupons whether real or colorable, and for the purpose of this proceeding it is unnecessary to determine which it is, was created in the interest of Wright & Company after the filing of the plan and exists for only

C. Wright & Co., relative to working out a refunding plan for the refunding of the obligations in question. At such meeting Albert Roberts, Jr., appeared for Ed. C. Wright & Co. and stated that he was Vice-President of the Company and spoke for the company. A plan of refunding was discussed at such meeting but no definite action taken. Subsequently a suit was filed in Broward County Circuit Court on the same bonds and coupons in the name of G. H. George, and speaking of said suit, Ed. C. Wright, the President of Ed. C. Wright & Co., stated that he controlled the suit, and could have the suit dismissed if the involved bonds could be refunded. At the time a refunding plan was discussed. The George suit was subsequently dismissed. In the latter part of May, 1939, the Refunding Agent had a conversation with Mr. Albert Roberts, Jr., about agreeing to the Plan of Composition which had been adopted by the Petitioner. At that time the particular bonds were mentioned, and the difficulty of refunding the invalid bonds was discussed. At that conference the said Albert Roberts, Jr., was speaking as the Vice-President of the said Ed. C. Wright & Co., and did not deny that Ed. C. Wright & Co., owned the bonds, but stated that he would take the matter up with the company. When the proofs of claim were filed, Ed. C. Wright & Co., filed a proof of claim on certain bonds and Albert Roberts, Jr., filed a proof of claim on certain coupons detached from said bonds.

"The evidence shows that the said creditor, Albert Roberts, Jr., has never indicated that he owned any bonds or any coupons detached from said bonds, but on the contrary has always insisted that same were owned by Ed. C. Wright & Co. It would thus appear if any sale of coupons was made, it was made after May, 1939, and after the Plan of Composition of Debts was adopted, and after Albert Roberts, Jr., had full knowledge of the terms and provisions of the Plan, and knew the provisions of the plan relative to the disposition of defaulted interest."

one purpose, as a device to raise an apparent equity in his favor in contemplation of which the whole plan would be held invalid as discriminatory and unfair. We think this is true because appearing as he does, in an anomalous position, at first and until the plan is filed, in opposition to it as an officer of Wright & Company, the owner of both bonds and coupons, and after the plan is filed, in his own behalf as the owner of coupons clipped from those very bonds, he has the burden of explaining the inconsistencies, and of establishing the integrity and consequent equities of his position.

This burden appellant has wholly failed to sustain. Indeed, by not appearing to give testimony he has refrained from attempting to sustain it. In addition, appellee has, by the proof it made, assumed and carried the burden of establishing, that appellant's ownership, as found by the Master, is either colorable or, if real, was acquired after the filing of the plan; and that his predicament is the result of his own contriving under circumstances depriving it of equitable appeal, and making it quite clear that the principles and cases appellant relies on are without application here.

They had to do with the acquisition and assertion of legal rights, the right to use the voting power which ownership gives to openly block a composition, and they correctly held that absent some provision of the statute fixing a time beyond which transfers could be made, the claims were assignable at any time and the assignee took all the legal rights of his assignor. Shropshire, Woodliff & Co. v. Bush, 204 U. S. 186, 27 S.Ct. 178, 51 L.Ed. 436. Appellant stands in no such case. His voting his claim in approval or disapproval is not challenged for his vote is unavailing as a vote to block the composition. More than 74% of the creditors have assented to it and have affirmatively approved it as fair and the exercise of no legal right which he could assert would have availed to defeat the composition. His effort was not to assert and exert his legal rights as owner, it was by putting up a poor mouth as to the hardships of his situation as an owner of coupons alone, to appeal to the conscience of the chancellor, and obtain a finding that the plan operates inequitably and unfairly against him, the sole owner of coupons, in favor of the other creditors, all of whom own both coupons and bonds.

This appeal, if made under different circumstances, might well have prevailed. When, however, his situation is considered in the light of the circumstances which have brought the situation about, it is seen that the equity he claims is not the real equity of one caught, without his fault, in a bad situation, but only a pretended one. For his situation as the result of concert with, and attempted artifice in the interest of, Wright & Company, to block, by appealing to equity, what they could not legally prevent, in order to extort recognition of their bonds which had been adjudged invalid. Proceedings in bankruptcy are ruled by equitable considerations, and the invoked provision of the act, that a plan must not discriminate unfairly in favor of any creditor or claims of creditors, has no application to this case. Compositions of all kinds, under the original Bankruptcy Act, and as provided for in the later acts, are grounded on considerations of the purest equity and proceedings under statutes authorizing them have always required openness and fairness of dealing. Particularly are secret dealings and arrangements between creditors or between creditors and bankrupt to obtain advantage over other creditors, condemned. We pointed this out in Texas Hotel Securities Corporation v. Waco Development Co., supra. The same thing has been pointed out in numerous other cases. 6 A.M.Jur. § 417, p. 776; Zaveloe v. Reeves, 227 U.S. 625, 628, 33 S.Ct. 365, 57 L.Ed. 676, Ann.Cas.1914D, 664. For a court to give effect to the secret contrivances and arrangements evidently existing here, as a basis for forcing recognition of Wright & Company's adjudicated bonds, would be to disregard and to do violence to all of these considerations.

In view of our conclusion that appellant is without standing to urge objections to the plan as unfair and discriminatory as to him, though we are by no means prepared to agree with him on the other two points he makes against it and the order, it is unnecessary to determine their correctness. For as to him and his appeal these questions present merely colorable disputes, mock causes, in short, are moot. Lord v. Veazie, 8 How. 251, 12 L.Ed. 1067; Jones v. Montague, 194 U.S. 147, 150, 24 S.Ct. 611, 48 L.Ed. 913.

The order appealed from is affirmed.

Affirmed.