## CONTINENTAL INS. CO. et al. v. LOUISIANA OIL REFINING CORPORATION et al.

### No. 8315.

Circuit Court of Appeals, Fifth Circuit.

April 10, 1937.

*Rehearing denied May 22, 1937.

Sidney L. Herold and Isaac Abramson, both of Shreveport, La., Joseph A. McCaleb and Charles I. Denechaud, both of New Orleans, La., Aubrey Barbour, of Newport, Ky., and H. Struve Hensel, of New York City, for appellants.

H. C. Walker, Jr., Elias Goldstein, Arthur O'Quin, Leon O'Quin, Robert Roberts, Jr., and Howard B. Warren, all of Shreveport, La., for appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

Louisiana Oil Refining Corporation, claiming to be a debtor unable to meet its debts as they mature, filed its petition for a reorganization of itself and a subsidiary corporation wholly owned by it under Bankruptcy Act § 77B (11 U.S.C.A. § 207). The plan offered was, after a year's delay, amended and confirmed. Three appeals are before us: one by common stockholders, one by a preferred stockholder who consistently opposed the plan, and one by a group of preferred stockholders who constitute a majority, the most of whom at first consented to the plan but withdrew consent before the plan was amended or confirmed. The questions of law for review are indicated as discussed below. To their understanding a statement of the facts touching the debtor's debts and stock, the plan of reorganization, and the proceedings taken, is needful.

The debtor's business is the refining of petroleum and the sale of the products. In the fall of 1930 about 52 per cent. of its common stock was acquired by Arkansas Natural Gas Corporation, which was controlled by Cities Service Company. Arkansas Natural Gas Corporation thereafter took charge of the debtor and the officers of the one corporation became the officers also of the other. Most of the crude oil refined by the debtor was sold to it by Arkansas Fuel Oil Company, which was owned entirely by the Arkansas Natural Gas Corporation and was operated by the same officers. The debtor, as a result of its operations up to the filing of its petition May 28, 1935, had come to owe Arkansas Natural Gas Corporation about nine million dollars, its other indebtedness being about $600,000. Its assets were put at about seventeen and a quarter million dollars, though found by the court to be of a much less value. The outstanding preferred stock was 35,290 shares of par value $3,529,000, none being owned by the other corporations above mentioned. The dividends on this stock fell in arrears in 1932, and the arrearage in 1935 came to about $800,000. The plan of reorganization proposed November 20, 1935, was in substance that the Arkansas Fuel Oil Company should acquire all the assets of the debtor and assume and pay all its debts as they shall mature, and issue to the debtor's preferred stockholders for each of their shares two shares of its own preferred stock of a par value of $10 per share, and pay to the debtor's common stockholders $130,015, which is 10 cents per share. Arkansas Natural Gas Corporation as owner of more than two-thirds of the debts and more than half of the common stock accepted the plan. A bare majority of the preferred stockholders did also. A formal hearing on the plan after due notice was had January 7 and 8, 1936, which was adjourned for thirty days to permit further evidence and briefs, during which period on February 5th the appellant common stockholders filed an intervention requesting the court to inquire into a mismanagement of the debtor by the majority stockholder whereby it had created in 1931 at a cost of $1,000,000 a pipe line to carry the crude oil to the refinery, which line had paid for itself three and a half times over, but of which it had retained the benefit by making of it a separate corporation, and whereby the other subsidiary, the Arkansas Fuel Oil Company, had made money selling oil to the debtor corporation but had brought the debtor heavily into debt. The judge fell ill and so remained for some months. On May 13, 1936, most of the accepting preferred stockholders, appellants here, filed a written withdrawal of their consent and announced opposition to the plan on the grounds that by a discovery

**336**

of oil on lands in which the debtor was interested its assets were greatly increased in value, and that, while its operations at the time the plan was accepted had long been at a loss, they were now showing a profit. On October 3, 1936, the judge by informal letters addressed to the counsel who had appeared in the January hearing invited them to appear on November 9th to participate in a hearing "with a view of working out some solution of the problems of the Company." They appeared in what the decree terms an "informal conference to consider audits and appraisals" which had been made, and "ten days was granted for presentation of more favorable plan or plans." On November 19th and 20th there was a further meeting or conference. On the afternoon of the 20th the judge made an order which denied the intervention of common stockholders filed February 5th, and rejected suggestions just filed by them to the effect that the right of action for mismanagement against the directors of the debtor and affiliated corporations be reserved from the plan, and gave leave to the debtor "to amend its proposed plan so as to give its preferred stockholders twenty-five dollars in cash or in preferred stock of Arkansas Fuel Oil Company at their option, and so as to give common stockholders of the debtor other than Arkansas Natural Gas Corporation and Cities Service Company twenty-five cents per share, and as thus amended the plan will be approved, but not otherwise." On November 21st the debtor in writing "accepted the amendment of the plan required by the court," and Arkansas Fuel Oil Company, Arkansas Natural Gas Corporation and Cities Service Company did the same. On November 23d the minutes show that a decree of confirmation was submitted in chambers, and that one counsel representing preferred stockholders objected to the form of the decree. On November 24th the decree of confirmation was signed. It finds as a fact that the debtor is solvent as to debts but that the excess fair value of its assets is less than the amount or value to be distributed to preferred stockholders under the plan of reorganization as amended; that the amendment increases what is to go to them and to common stockholders; that necessary acceptances exist; and that the withdrawal of consent by the preferred stockholders was "without effect."

◼ 1. While it might seem from the order of November 20th and the decree that the court refused either to investigate or to reserve the claim of the debtor against its officers and majority stockholder for mismanagement, it further appears that much evidence was taken on that question in the hearing on January 7th. It also appears that an able stockholders' committee was appointed by the court, which later investigated this matter and recommended against litigation about it. The appealing common stockholders do not seem to have had any additional evidence which they were prevented from presenting. The existence and value of this claim depended on the facts about it. The record before us does not purport to contain what was informally presented to the court without objection in the audits and appraisals and other reports since the hearing on January 7th. We cannot say as a matter of law that the plan is not fair because disposing of this supposed asset without litigating it or better ascertaining its value.

◼ 2. It is further contended that the plan is not within the bankruptcy power because it does not alter the rights of creditors but serves only to readjust stock ownerships. A plan which does not propose at all to change the position of creditors, if within the federal bankruptcy power, is not within section 77B. The first requisite of a plan as fixed by paragraph (b) is that it "shall include provisions modifying or altering the rights of creditors generally, or of any class of them, secured or unsecured, either through the issuance of new securities of any character or otherwise." 11 U.S.C.A. § 207(b). We think the rights of all creditors are modified and altered here because, while they are to be paid in full as their debts mature, the court is not to pay them, but a new debtor, the Arkansas Fuel Oil Company, is to assume them. The substitution of a new debtor, although solvent, is a fundamental alteration of a creditor's rights.

◼ 3. But the preferred stockholders say that to enforce the plan is to take their property without due process of law by compelling them to accept for their shares stock in another corporation to which they do not wish to subscribe; that it does not reorganize their corporation but destroys it and completely disposes of its business and effects. That such treatment may be a reorganization under 77B appears from paragraph (b) (9), 11 U.S.C.A. § 207(b) (9), which states that a plan "may include the transfer of all * * * of the property

of the debtor to another corporation * * * or the consolidation of the properties of the debtor with those of another corporation, or the merger or consolidation of the debtor into or with another corporation." In such transactions there is commonly an exchange of stocks, and this was contemplated by the act. Since the stockholders in a case under section 77B cannot pay off the creditors except by aid of some plan of reorganization, they are in no position to be overexacting as to what is saved by it for them. The act puts the rights of each class of stockholders under the rule of the majority, a rule generally incident to stock ownership. What a majority of those in their class and having the same interests think to be best the minority must accept. The provisions of paragraph (b) (4), section 77B, 11 U.S.C.A. § 207(b) (4), as to providing protection by a sale or appraisal and payment in cash or other method relate only to a class of stockholders in which a majority do not accept the plan. In thus giving the majority the right to control the fate of the class there is nothing arbitrary. In the ordinary affairs of a corporation the majority commonly prevail. When the extraordinary situation arises that the corporation cannot meet the demands of its creditors as they mature and something must be done, it is reasonable and just that the majority should by law be enabled to control, subject to a hearing before and the decision of the court. The stockholder's interest is not a sole and single one, but is wrapped up with the interests of other stockholders. It would be more unreasonable to allow the minority to injure and thwart the majority in their view of the common interests than it is to permit the majority view to prevail. The provisions of the act do not deny due process. We may add that under the plan finally approved here the preferred stockholders can have cash instead of new stock at their option, and so are not required to take stock in another corporation.

4. But, if a majority of the class are to control, the expression of their will should be clear and persistent. The judge in acting on a plan must investigate the good faith and purity of the acceptance, and the time of acquiring the claims so voting. Paragraphs (e), (f) (6), of section 77B, 11 U.S.C.A. § 207(e), (f) (6); Texas Hotel Securities Corporation v. Waco Development Co. (C.C.A.) 87 F.(2d) 395, 396. When majorities accept for all the classes affected by a plan, no contract at once results. The matter is but ripened for consideration by the judge, and a basis provided for his action. Yet withdrawals of consent ought not thereafter to be allowed as of right and without good reason. To do so would embarrass orderly procedure and make room for trafficking in votes. The mention in paragraph (f) of a right of withdrawal of an acceptance after a material adverse change in the plan argues that there is no such right before. But, if a member of the majority, because of having been misled, or of new information, or a change in the condition of the debtor, or for other good reason, should honestly alter his opinion of what is good for himself and the dissenting minority, the judge ought at any time before the plan is confirmed to hear his reasons and, if found substantial, to permit withdrawal. We held in the case of Texas Hotel Securities Corporation v. Waco Development Co., supra, that it is not the opinion of the judge but the will and vote of the required majority of each class affected that enables him to bind the dissenting minority. If that will for substantial reasons changes before the confirmation, the vote ought to be allowed changed accordingly.[1] In the case before us, after action on the plan had been delayed for over four months, nearly all the class of preferred creditors who had voted for it filed notice of the withdrawal of their vote of acceptance and gave good reasons for it. Without them the vote for the plan is very far below a majority. The preferred stockholders are the class most affected by the plan, for the creditors are to be paid in full and the common stockholders are found to have no real interest in the assets. The judge held that the withdrawal of these acceptances was "without effect." We understand that he did not exercise judgment or discretion about it, but held the former

[1] A composition in bankruptcy offered by a debtor and accepted by the requisite majority of his creditors more nearly approaches a contract. It has been held that neither can withdraw of right, and that fraud or misrepresentation in procurement is necessary to justify withdrawal. In re Bryer (C.C.A.) 281 F. 812; In re Jablow (C.C.A.) 15 F.(2d) 132. A plan of reorganization is much less simple and requires much more of the judge, and may be initiated by others than the debtor.

acceptances to be final. This, we think, was error. These acceptors ought to have asked leave to withdraw instead of announcing their withdrawal, but, the procedure being novel, the judge should have looked beyond its form to its substance, and have inquired into it instead of rejecting it as without effect.

5. The confirmation was unauthorized for another reason. The plan which was confirmed was not that which was accepted, but it had been changed on the court's suggestion so as not only to give preferred stockholders for each share two and a half shares of new stock instead of two, but also to give them an option of taking $25 instead, and to increase what was to go to common stockholders from 10 cents per share to 25 cents. The judge disapproved and put an end to the original plan unless these changes were made. It is therefore argued that the amendment so effected was not "proposed therein by any party in interest" as provided in paragraph (f). When the debtor took the judge's suggestion and adopted it, it was in effect proposed by it. We think a judge may properly, no matter by what form of words, suggest changes which he thinks necessary to the fairness or feasibility of a plan, to be inserted in it by the parties in interest. But touching such amendment paragraph (f) provides that there shall be a hearing upon notice to creditors and stockholders, "subject to the right of any creditor or stockholder who shall previously have accepted the plan to withdraw his acceptance * * * if, in the opinion of the judge, the change or modification will be materially adverse to the interest of such creditor or stockholder." 11 U.S.C.A. § 207(f). There was no hearing on notice to creditors and stockholders touching this amendment. The amendment was not made during the hearing on the original plan, or any adjournment of it. That hearing and all duty of persons previously notified to attend it ended at latest with the order of November 20th. Creditors and stockholders could not know whether or when the debtor would offer an amendment. Notice possibly was waived as to those appellants who were represented by the one counsel who the minutes show appeared on November 23d and objected to the form of the decree without objecting to the want of formal notice. But no waiver appears by any one else, and as to the appellants who thus appeared there was no waiver of their withdrawal of con-

sent which the court did not overrule until he signed the final decree. Under the circumstances, what they had filed was a standing demand to withdraw consent to which the amendment gave the quality of a right, unless the judge found, and was correct in finding, that the amendment did not materially affect them adversely. He did not so find, but only that "the amendment increases very materially the stock or cash to be received by preferred stockholders and the cash to be received by common stockholders." Both those facts are evidently true, but the question remains unanswered whether these withdrawers who agreed to take preferred stock in Arkansas Fuel Oil Company are not adversely affected by thus increasing the cash liabilities of their new corporation. If all other preferred stockholders should claim cash, and if two and a half times $130,000 is to be paid common stockholders by Arkansas Fuel Oil Company, the position of its preferred stock is adversely affected. It is true that the common stock of Arkansas Natural Gas Corporation and Cities Service Company is excluded by the amendment from participation, but it is not clear how much stock they now own. It may be that these affiliated corporations are willing to surrender to the other common stockholders their part in the distribution in order to get this plan confirmed, but the fairness of the plan is brought more sharply into question by thus giving to some common stockholders a larger share in the sale price of the debtor's assets contrary to their charter contract with the preferred stockholders that this should never be. The findings do not sufficiently negative the right to withdraw consent because of the amendment.

6. The amendment had the effect to separate the common stockholders into two classes, only one of which was to be affected by the plan as sellers of the debtor's assets. The other common stockholders were to get nothing as sellers, but were interested solely in acquiring those assets. There ought to have been a reclassification accordingly, if in truth any stockholders as such had any interest in the assets. The court first found that they had none, and in that view no classification of them and no vote of their class was of any importance. Nevertheless it awarded some of the common stockholders an increased interest in the price, manifesting an inconsistency that is confusing. However, since the nonparticipating common stockholders affirmatively

consented and since the generosity extended to the other common stockholders was altogether to their benefit, we see no ground for complaint on the part of any of them.

The appeal of the common stockholders fails, and the costs thereof are awarded against the appellants. The appeals of the preferred stockholders are sustained with costs, and the decree confirming the plan is set aside and further proceedings directed to be taken according to law.

Judgment reversed.