**In re PORTO RICAN AMERICAN TOBACCO CO.**

**PORTO RICAN AMERICAN TOBACCO CO. v. GLIDDEN et al.**

No. 407.

Circuit Court of Appeals, Second Circuit.

June 17, 1940.

H. Lewis Brown, of New York City (H. Lewis Brown and Frederic P. Benedict, both of New York City, of counsel), for debtor-appellant.

Fearey, Allen & Johnston, of New York City (Henry Alan Johnston, Nathan A. Smyth, and Theodore R. Finder, all of New York City, of counsel), for appellant Class A Stockholders Committee.

David J. Colton and Samuel Rubin, both of New York City (Samuel Rubin, of New York City, of counsel), for appellants Guthrie Protective Committee for Class A Stockholders.

Ralph Montgomery Arkush, of New York City (Ralph Montgomery Arkush and Percival E. Jackson, both of New York City, of counsel), for appellee Glidden Bondholders Committee.

Brush & Bloch, of New York City (Monroe Percy Bloch and Harold H. Levin, both of New York City, of counsel),

for appellee Bondholders Protective Committee.

William H. Button, of New York City (William H. Button and Theodore E. Larson, both of New York City, of counsel), for Gordon Auchincloss, trustee for debtor.

Chester T. Lane, General Counsel, and Edmund Burke, Jr., both of Washington, D. C., and J. Anthony Panuch, of New York City (John F. Davidson, of New York City, of counsel), for Securities and Exchange Commission.

Before SWAN, AUGUSTUS N. HAND, and PATTERSON, Circuit Judges.

PER CURIAM.

This is an appeal from an order of the District Court approving a plan filed by the trustee in a proceeding for reorganization of the debtor under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. This appeal from an order approving a plan filed by the trustee in a proceeding for reorganization of the debtor Porto Rican American Tobacco Company is taken by two separate committees representing groups of Class A Stockholders and by the debtor. While there are various technical objections to the order of the court below the real grievance of the appellants is that the Class A Stockholders do not receive sufficient recognition under the plan.

The contention that the Class A Stockholders should receive larger recognition is in substance dependent on the valuation of the net assets of Congress Cigar Company, Inc. (hereinafter called Congress), a subsidiary corporation of which the debtor owns approximately 81.8% of the capital stock.

█ The plan contemplates the purchase by Consolidated Cigar Corporation, another and competing cigar company (hereinafter called Consolidated) of all the assets of Congress, other than a claim of Congress against the debtor amounting to $204,038. The purchaser is to pay $4,000,000 in its own 10 year 4% notes for all the assets of Congress except its claim against the debtor and also is to assume the obligations of Congress. The plan also contemplates the cessation of Congress from business and its final dissolution. Upon dissolution approximately 81.8% of the notes of Consolidated will be available to the debtor by virtue of its holdings of Congress stock and the remaining notes to the

minority stockholders of Congress. The plan provides that the holder of each $1,000 bond of the debtor shall receive $940 in the notes of Consolidated or at his option $846 in cash. The remaining assets of the debtor, other than the 4% notes of Consolidated, will be placed in a new reorganized company which will have outstanding 44,638.1 shares of common stock. Approximately 77.2% of these shares is to be issued to the present bondholders of the debtor (on the basis of 10 shares of stock for each $1,000 bond) and the balance of approximately 22.8% is to be issued to the present Class A Stockholders of the debtor (on the basis of 1 share of the new stock for each 20 shares of Class A stock). Inasmuch as Class B Stockholders have no equity in the debtor's assets they are accorded no participation in the plan.

If the plan is carried into effect the bondholders will receive in exchange for their bonds and interest in default since July 1, 1939, $3,238,300.06 principal amount of 4% notes of Consolidated and 34,450 shares of the stock of the reorganized company. The Class A Stockholders will receive none of the Consolidated notes but are to be entitled to 10,188.1 shares of stock in the new company.

The Securities and Exchange Commission reported the total value of Congress as a going concern not to exceed, and in all likelihood to be less than, $3,500,000. It found that the value of Congress assets as of December 31, 1939, other than its brands, names and trade marks, would range from approximately $4,100,000 to $4,300,000, adding, however, that these values "might be affected by market and other factors, at the time of liquidation, which are incapable of present measurement and would require substantial qualification of these estimates."

It is to be remembered that the income of Congress is shown to have declined enormously since 1929; that it has paid no dividends since 1937, and that its reported net income in 1939 was only $30,000.

We have carefully considered the contentions of the appellants as set forth in their briefs and oral arguments and are convinced that there is no ground for rejecting the estimate of the assets of Congress by the Commission or for revising the conclusion of the court below that the proposed plan is fair, equitable and feasible. In our opinion Congress, though entirely

solvent, has neither assets nor future prospects that justify higher valuations than those reported by the Commission. In view of the thorough investigation of the proposed plan that has been made it is impossible for us to reach a more correct or just solution of the questions of fact than has been reached by the court below aided as it has been by expert witnesses of weight as well as by the report of the Commission.

The technical and procedural objections to the order also seem to be without merit. It is argued that the plan does not constitute a reorganization but only a method of liquidation—this because it provides for the immediate sale of the debtor's principal asset, namely, its interest in Congress, and for the ultimate liquidation of its remaining assets by the reorganized company. But a plan involving ultimate liquidation is not contrary to the terms of the reorganization provisions of the Bankruptcy Act. Section 216 (10) of Chapter X provides that a plan of reorganization of a debtor may include "the sale or transfer of all or any part of its property to one or more other corporations theretofore organized or thereafter to be organized; the merger or consolidation of the debtor with one or more other corporations * * *".

In Re Central Funding Corporation, 2 Cir., 75 F.2d 256, we held that a plan providing for ultimate liquidation of all the assets of a debtor by a transferee corporation did not make the transaction a liquidation rather than a reorganization. In Continental Ins. Co. v. Louisiana Oil Refining Corp., 89 F.2d 333, the Court of Appeals of the Fifth Circuit upheld a plan of reorganization wherein another corporation was to acquire all the assets and assume all the liabilities of the debtor and whereby the preferred stockholders should receive preferred stock of the purchasing corporation in exchange for their holdings. These decisions are persuasive authorities in support of the order of the District Court in the case at bar.

It is further argued by the appellants that the District Court has no power over the assets of Congress. This is so unless that corporation enables them to be brought into the reorganization to the extent of 81.8% thereof. The plan so far as the debtor is concerned is the essential equivalent of a sale of its shares of the stock of Congress. This would surely have been an entirely lawful step in a plan of reorganization.

The contention of appellants that the plan involving cessation of business by Congress (a solvent corporation) is a fraud on its minority stockholders is without merit. That the plan may be effectuated Congress must comply with the laws of the State of Delaware under which it is organized. There is nothing to indicate that Congress cannot lawfully carry out the proposed transfer of its assets or that its minority stockholders will have any just grievance because of such a transfer. In our opinion they are thus likely to realize more upon their stock than in any other way. It is for the corporate authorities and stockholders to sanction the transaction if they see fit.

The proposed plan recognizes Class A Stockholders to an extent which requires the bondholders to accept a part of their claims in stock of a transferee company and to wait years to realize 90% of their claims in cash, in the meantime receiving upon the notes issued by Consolidated a lower rate of interest than that reserved in their original debentures. All this, in view of the findings of the court below and the report of the Commission, seems to indicate that if the plan were open to any doubt that doubt would be because of over liberality in dealing with the Class A Stockholders.

Order affirmed.