**In re LONG ISLAND PROPERTIES, Inc.**

**MAST CORPORATION et al. v. BUCKLEY et al.**

**No. 191.**

Circuit Court of Appeals, Second Circuit.

Argued Jan. 16, 1942.

Decided Jan. 29, 1942.

David W. Kahn, of New York City (Nathan Siegel, of New York City, of counsel), for appellant Mast Corporation.

John E. Bleibtrey, of Brooklyn, N. Y., Attorney for appellant J. P. Duffy Co.

Dreyer & Traub, of Brooklyn, N. Y., for appellant Harway Marble Works Inc.

Abraham Glick, of New York City, for appellant B. & F. Concrete Co. Inc.

Henry Albert, of Long Island City, N. Y., for appellant Joseph Eckert.

Ralph Kaskell, Jr., of Jamaica, N. Y., for appellant Marcella Tile Co.

Harry Schulman, of New York City, for appellant Weisberg-Baer Co.

Zimmerman & Fields, Attorneys for William Klobus & Co., Appellant.

Maurice Goldberg, Attorney for Kurtz Iron Works Inc., Appellant.

George Rudnick, Attorney for Berriman Builders Supply Co. Inc., Appellant.

Buchter, Rathheim, Abrams & Holz, of New York City, for appellants Long Island Properties, Inc., and others.

Albert B. Caspers, of New York City (Richard K. Gregory, of New York City, of counsel), for appellee William J. Buckley, trustee.

Duberstein & Schwartz, of Brooklyn, N. Y., for appellee Harry Colen.

Before SWAN, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

On July 3, 1941, an involuntary petition for reorganization of Long Island Proper-

ties, Inc., was filed in the district court pursuant to Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. Thereafter on August 5th, the petition was approved as filed in good faith and the appellee, William J. Buckley, was appointed trustee of the debtor's property. This consisted of a tract of land on which were four unfinished apartment buildings. Under date of October 7, 1941 the other appellee, Harry Colen, submitted to the debtor's trustee a proposal to enter into a contract to complete the buildings for the sum of $75,000 to be paid in trustee's certificates. Upon notice to all persons interested in the debtor's estate and after hearings the trustee obtained on October 22nd an order authorizing him to issue $76,-000 of first lien certificates and to use not more than $75,000 of them for completing the buildings of the debtor "upon such terms and conditions as shall be approved by the court." Neither this order, nor the notice upon which it was based, made any reference to Colen's offer, but his offer was discussed at the hearings preceding entry of the order. Thereafter a formal contract between the trustee and Colen was drawn up and an order to approve the same was noticed for hearing on November 17th. The notice, however, was served on only a few of the attorneys who had entered appearances in the reorganization proceedings. In the meantime, one of the creditors, Mast Corporation, had submitted to the trustee an offer in the name of Country Life Apartments, Inc. to complete the buildings for $60,780, excluding landscaping, and to propose through the trustee a plan of reorganization which would give the creditors 100 per cent. of their claims and permit stockholders to have an interest on certain conditions. As the trustee's counsel admitted, this was a better offer than the proposed contract with Colen. Under the Colen contract, not only would the cost of completing the buildings be at least $10,000 more than that proposed in the Country Life offer, but it also contemplated a plan of reorganization whereby the creditors would get only sixty cents on the dollar and the stockholders nothing, provided the trustee should elect, with the court's approval, to pay the trustee's certificates by deeding the property to Colen. Nevertheless, the trustee felt morally bound not to withdraw, although he recognized that the contract with Colen was entered into subject to approval of the court. Several creditors had filed affidavits in opposition to approval of the Colen contract and no creditor spoke in favor of it. At the conclusion of the hearing the court said: "I think the counter offer [Country Life's] is the one that ought to be taken, regardless of the difficulty that anybody is put into, and I will reserve decision until Wednesday." The following day a letter was presented to the judge on behalf of Colen raising his offer to 100 per cent. for creditors in case the trustee should elect to deed the property to him, and without further hearing, an order was signed on November 19th, approving the contract as amended. Ten days later this order was resettled to include more complete recitals. Numerous creditors and the owner of half of the debtor's stock appealed from both orders. The appeals have been consolidated in this court.

We think it very clear that the orders must be reversed. As the District Judge recognized, a decision as to the terms of the contract to complete the buildings would necessarily have an important bearing on any plan of reorganization which might subsequently be proposed. It was, therefore, particularly important that the creditors and the stockholders should have an opportunity to be heard as to approval of the contract to be awarded. See 11 U.S.C.A. § 606; Gerdes, Corporate Reorganizations, Vol. I, p. 603; Finletter, Law of Bankruptcy Reorganization, 1939 ed., p. 243. This they did not get. Notice of the hearing on October 21st did not specify that a contract for completion would be presented for approval. This was a violation of Rule 7(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, if such relief was to be sought at that hearing. The notice of motion which brought on the hearing of November 17th was ineffective to cure the prior defect in notice; it was served on only a fraction of the parties to be affected thereby, contrary to Rule 5, F.R.C.P. No notice whatever was given of the amendments introduced by the letter of November 18th. Nor was the offer of Country Life Apartments ever formally presented to the creditors and stockholders so that they could compare the two offers and express their preference between them. Such parties as had an opportunity to express their views were opposed to accepting the Colen contract, which everyone conceded was inferior to the other before its amendment by the letter of November 18th. It obviously remained inferior even after that amendment. What prompted the judge to accept it does not expressly appear. It may be inferred that he thought the trustee was morally

committed to deal with Colen because he had accepted Colen's offer on October 22nd. But the trustee had no power to contract except upon condition of subsequent approval by the court, and such approval should have been withheld when it appeared that sound business judgment required acceptance of a better available offer.

The orders are reversed. Appellate costs are awarded against the appellees.