### In re LORRAINE CASTLE APARTMENTS BLDG. CORPORATION, Inc.

#### No. 78007.

District Court, N. D. Illinois, E. D.

Feb. 10, 1944.

Joseph B. Lawler and William O. Burns, both of Chicago, Ill., for trustee.

Hummer, Van Ness & Yowell, of Chicago, Ill., for debtor.

William Henning Rubin, of Chicago, Ill., for intervener.

Thomas B. Hart and Edward P. McGuire, both of Chicago, Ill., for Securities and Exchange Commission.

Irving Greenfield, of Chicago, Ill., for bondholders.

CAMPBELL, District Judge.

This matter comes before the Court upon a report of the Special Master recommending the approval of a plan of reorganization filed by the trustee and the disapproval of a plan submitted by the debtor in a proceeding for its reorganization under Chapter X of the Bankruptcy Act, as amended, 11 U.S.C.A. § 501 et seq. On

April 30, 1942, debtor filed its petition for reorganization herein which was duly approved as properly filed in good faith, and debtor continued in possession of its property until July 20, 1943 at which time an order was entered appointing as trustee James W. McNichols who qualified as such and, after an investigation into the affairs of the debtor, filed a plan of reorganization on August 31, 1943.

At the request of the Court, the Securities and Exchange Commission filed its notice of appearance herein on July 22, 1943 and since that date has actively participated in the proceedings.

The debtor owns and operates a three-story, English basement, steam-heated, unfurnished apartment building located at 5001 West Monroe Street, Chicago, Illinois. The building was constructed in 1928 and is subject to the lien of a trust deed dated March 17, 1928 securing first mortgage bonds of debtor originally issued in the principal amount of $100,000.

On July 22, 1935 in a proceeding under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, a plan of reorganization of debtor was confirmed which provided for a seven-year extension of the maturity of debtor's outstanding bonds to May 1, 1942, a waiver of interest during the first year of the extended period, and interest at a reduced rate of 3% per annum to maturity and thereafter at 7% per annum.

At the time of the institution of the present proceedings, first mortgage bonds of the debtor were outstanding in the principal sum of $72,500. Unpaid interest on these bonds as of September 1, 1943 amounted to $6,766.67. There are practically no other liabilities of the debtor except current real estate taxes which amount to approximately $2,250 per year.

The debtor's property has been the subject of three appraisals filed in these proceedings. On November 24, 1942, one Ward Farnsworth appraised the property as having a value of $61,000. On May 13, 1943, Appraisal Associates, Inc., filed a report showing a valuation of $73,250. On September 1, 1943, Paul A. Hazard, an appraiser appointed by the Court, filed his report that the present cash market value of debtor's land and building is $75,000. The gross rental income of the property, approved by the Office of Price Administration, for the year ending June 1, 1943 was $14,820, and the net return was approximately $6,600 before provision for bond interest and depreciation. As of September 1, 1943, the trustee had a net cash balance on hand of $11,475.

The capital stock of the debtor is entirely owned or controlled by Angelo Castellani and Margaret Castellani, his wife.

On September 15, 1943, the debtor filed an amended plan of reorganization herein providing in substance that the debtor will raise "from outside sources" the sum of $10,000 which, together with cash in the hands of the trustee, will be used to pay costs and expenses of the proceeding, interest on the first mortgage bonds at the rate of 5% per annum from May 1, 1942, and approximately 20% on the principal of the bonds. Debtor's plan also provides that the unpaid principal of the outstanding bonds is to bear interest at the rate of 5% per annum and to mature five years from the effective date of the plan which "is to become effective as soon as practicable."

The debtor's plan recites that bonds aggregating $52,000 in principal amount have been acquired by "speculators" during the pendency of the proceedings at a cost of approximately $38,000 and that the claims based upon these bonds should be disqualified in computing the majority necessary for acceptance of the plan and also that the participation of these claims in the plan should be limited to the actual consideration paid therefor.

■ The debtor's plan appears to be unfair in that it requires bondholders to sacrifice a portion of their accrued interest claim and to extend the maturity of their bonds for five years without compensatory treatment. It is also not feasible inasmuch as the principal amount of the first mortgage indebtedness of approximately $58,000 plus a proposed new loan in the amount of $10,000 would represent a total debt of 90% of the appraised value of the debtor's property. Furthermore, the reasonably prospective net income of the property, after provision for interest payments but before depreciation, is not sufficient to retire the bonds within the five-year extended period or even to retire the indebtedness to such point as would appear to make possible the avoidance of a third reorganization proceeding.

■ With reference to the acquisition of $52,000 of bonds by "speculators" during the pendency of the proceedings, the Special Master has found that there was no fraud involved in the purchase of these

bonds and that the purchasers are not and never were in a fiduciary relationship with the bondholders, the debtor, or stockholders of the debtor. The evidence in this case does not warrant disturbing the findings of the Special Master on these two points, and, as there is no proof that the bonds in question have been acquired by their present owners for the purpose of accepting or rejecting a plan other than in good faith, this Court is not disposed to disqualify these bonds from voting upon the plan of reorganization approved herein. Section 203 of Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 603; In re Pine Hill Collieries Co., D.C.C.D.Pa.,1942, 46 F. Supp. 669, 671; Texas Hotel Securities Corp. v. Waco Development Co., 5 Cir., 1937, 87 F.2d 395, 398.

■ Under the facts of this case, there is no occasion to limit participation in a plan by the holders of bonds purchased during the pendency of these proceedings to the amount of their cost. In re Utilities Power & Light Corp., D.C.N.D.Ill.,1939, 29 F.Supp. 763, 770; In re Celotex Co., D. C.Del.,1935, 12 F.Supp. 1, 5; In re Indiana Central Tel. Co., D.C.Del.1938, 24 F.Supp. 342, 344; In the Matter of Point Building Land Co., D.C.W.D.Pa.,1937, 37 A.B.R., N.S., 464, 466.

On August 31, 1943, the trustee filed a plan of reorganization providing for a public sale of all of the debtor's assets, exclusive of cash on hand, at not less than $75,000. Under this plan the net proceeds of such sale, together with cash on hand, would be applied first, to the payment of the reorganization expenses and current taxes; next, to the payment of the principal amount of the outstanding bonds and accrued interest thereon, the remainder to be distributed to the stockholders of the debtor.

The trustee has received an offer from one Frank Heller and Rose Heller, his wife, to pay $75,000 cash for the improved real estate of the debtor, which offer has been accompanied by an earnest money deposit of $7,500. On the basis of estimated reorganization expenses and tax liabilities, the sale of the premises for $75,000 or more would be sufficient to pay bondholders the full amount of principal and accrued interest on their bonds. Inasmuch as this plan accords complete satisfaction of the bondholders' claims, it is obviously fair to them and is not unfair to the stockholders who will· receive for their equity all that the property is worth after payment of creditors. The trustee's plan involves no question of feasibility.

The debtor objects to the trustee's plan as requiring a forced sale of the property in contravention of the purpose of Chapter X of the Bankruptcy Act and as depriving the debtor . of its property without due process of law.

Section 216(10) of Chapter X, 11 U.S. C.A. § 616(10), provides that a plan of reorganization under this chapter with respect to a debtor's property may include " * * * the sale of all or any part of its property, either subject to or free from any lien, at not less than a fair upset price and the distribution of all or any assets, or the proceeds derived from the sale thereof, among those having an interest therein; * * *."

The Court is of the opinion that the recent decision of the Supreme Court in Fidelity Assurance Ass'n v. Sims, 318 U.S. 608, 63 S.Ct. 807 (April 5, 1943), does not inhibit the approval or confirmation of a plan of reorganization providing for a sale of a debtor's property at a fair upset price. The Sims case involved the question whether the petition was filed in good faith because at the outset of the proceedings it appeared unreasonable under the facts and circumstances of that case to expect anything other than a conversion of the assets into cash and a distribution of cash to security holders.

■ It does not follow from this decision that if a Chapter X proceeding has been properly commenced, a petition properly approved as filed in good faith, and a trustee appointed who has after investigation reached the conclusion that the best interest of creditors and stockholders will be served by some type of liquidation plan, a realization of this desired end would automatically require a dismissal of the proceedings or an adjudication in bankruptcy. The language of Section 216(10) clearly envisions and authorizes the Court to approve the type of plan proposed herein by the trustee. In re Porto Rican American Tobacco Co., 2 Cir., 1940, 112 F.2d 655, 657.

An order will therefore be entered upon notice, consistent with this opinion, approving the report of the Special Master.

The petition of debtor, its stockholders, and Edward Gorman, a bondholder, presented herein on November 1, 1943, praying for the entry of an order limiting the allowance of claims based upon bonds pur-

chased during the pendency of the proceedings, raises no issue apart from the fully considered objections to the trustee's plan, and accordingly an order will be entered denying the relief therein prayed.