## COUNTRY LIFE APARTMENTS, Inc., et al. v. BUCKLEY.

### No. 150.

Circuit Court of Appeals, Second Circuit.

Dec. 4, 1944.

Emanuel A. Stern, of New York City, for appellants.

Richard K. Gregory, of New York City (Albert B. Caspers, of New York City, on the brief), for appellee.

Henry H. Silverman, of New York City, for Petitioning Creditors, intervenors-appellees.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal by three creditors of Long Island Properties, Inc., from an order of the District Court, May 31, 1944, confirming a plan of reorganization submitted by the debtor's trustee in reorganization proceedings under Bankruptcy Act, Ch. X, 11 U.S.C.A. § 501 et seq. The three creditors, Country Life Apartments, Inc., Mast Corporation, and Alfred L. Lundin, were owners and holders of claims for mechanics liens, of general claims, and of the third mortgage, and, through purchase and assignment, had managed to obtain control of more than one-third of the amount of claims of each of the two classes of creditors affected by the confirmed plan. The order of confirmation also found a substitute plan offered by these creditors to be "not feasible, unfair and inequitable."

An involuntary petition for the reorganization of this debtor, filed on July 3, 1941, was approved by the District Court on August 5, 1941, with appellee, William J. Buckley, appointed trustee. At the time of the filing of the petition the debtor had no cash on hand, and its only substantial assets were a large plot of land situated in Garden City, Nassau County, New York, upon which the debtor had completed ninety per cent of the construction of four separate three-story apartment buildings. Liabilities exceeded $400,000, including three defaulted mortgages and claims secured by conditional bills of sale, mechanics liens, and judgments.

During the administration of the reorganization proceedings, and after prolonged negotiation and litigation (cf. In re Long Island Properties, Inc., 2 Cir., 125 F.2d 206; Id., 143 F.2d 349; In re Long Island Properties, Inc., D.C.S.D.N.Y., 40 F. Supp. 611, Id., 42 F.Supp. 323), the buildings were completed by the appellant Country Life Apartments, Inc., as contractor for the trustee, pursuant to an order of approval by the District Court, dated March 5, 1942. Thereafter the United States under its war powers took possession of the premises; and subsequent to relinquishment of such possession, the apartments were one hundred per cent rented and part of the rental income was used to satisfy three conditional bills of sale at a substantial discount. Approximately $18,000 of further income represents cash on hand, which at the present time augments the assets originally held by the debtor. In addition, the debtor now has a contingent interest in a $3,498.62 trust fund.

During the administration of these proceedings the trustee also refinanced some of the open mortgages by securing a ten-year first mortgage for $375,000; and the debtor's present liabilities consist of $386,-499.94 in mortgaged indebtedness, and $119,058.07 representing mechanics liens and unsecured claims. A plan of reorganization sponsored by appellant Mast Corporation, the third mortgagee, and accepted by the trustee and approved by the referee in bankruptcy, who sat as special master, was denied confirmation by the District Court, April 22, 1942, for lack of evidence of insolvency and for lack of a finding of the amount of the liabilities or of the value of the property.

The plan finally submitted by the trustee was predicated upon a proposed sale of the debtor's property for $525,000 to one Sidney Trompeter under a contract of sale, which provided for the assumption of the first mortgage and payment of the balance in cash, but which required that the sale be made part of the trustee's reorganization plan and that the plan be confirmed by the reorganization court on or before July 1, 1944. The plan provides for utilization of the proceeds of sale and cash in the trustee's hands from the operation of the buildings for the payment in full of all mortgage claims and expenses of administration, including a $15,000 brokerage commission to the broker who effected the Trompeter sale, or any lesser amount that might be fixed by the District Court. A ten per cent preference payment is then provided for the valid mechanics lienors, after which the entire balance is to be distributed in cash pro rata among the mechanics lienors and unsecured creditors. The mechanics lienors and unsecured creditors are thus the only classes of creditors affected by the plan. No provision is made for the participation of stockholders, except in the event that a surplus remains after the payment in full to all the creditors; but provision is made for protection of nonassenting creditors, through participation in the proceeds of a public sale of the property at an upset price of $525,000, all cash above the first mortgage.

The special master, in his report dated April 28, 1944, approving the plan, found the debtor to be insolvent; he also found upon all the evidence that the present fair value of the debtor's property was $525,-000, which was also a fair upset price for sale of the property. These findings were accepted by the District Court in approving the master's report. The findings of insolvency and of value were not challenged, and are expressly accepted by appellants on this appeal; indeed, their plan calls for a reorganized corporation which will purchase the debtor's property at this value.[1] Since this value was greater than the proved liabilities, insolvency was predi-

---

[1] Appellants do not even now make any direct attack upon the upset price; perhaps they do so indirectly in their contention that their plan means a substantial increase over the price obtained by the trustee. So far as we can discover, however, this contention is predicated upon elimination of the agent's commission on the sale. An upset price based upon fair value would seem clearly fair.

cated upon a lack of sufficient assets to pay the income tax for the year, the commission on the sale of the property, and the expenses and allowances in these proceedings. The special master had conducted hearings on the plan, and so did the District Court, which approved it in an order dated May 10, 1944. No appeal was taken from this order.

On May 12, 1944, the trustee sent a letter to all creditors, calling for "consideration * * * of such objections as may be made to the confirmation, and for consideration of any further bids for the property which shall have been received"; and the accompanying invitation for offers stated that the court would take such action at the confirmation hearing as it "may deem commensurate with the best interests of the parties." Thereafter, on May 27, 1944, appellants served the trustee with a copy of the amendments they proposed to the trustee's plan, to convert it into their substitute plan. Their plan provided for the transfer of the debtor's assets to a new corporation, and divided creditors into three classes: second and third mortgage creditors, mechanics lienors, and general creditors. The second and third mortgage creditors were to be paid in cash in full, but had the option to take shares in the new corporation for the amounts due them. The mechanics lienors were to be paid a ten per cent preferential installment in cash, and cash payment was provided for all mechanics lien and general claims which did not exceed $500 each. The remainder of the claims were to be satisfied by shares of stock in the reorganized corporation, at the rate of a share worth $90 in new money put into the corporation for each $100 face amount of allowed claims.

Appellants offered their plan for the first time at the confirmation hearing, by way of objections to the trustee's plan; and the court found that appellants' proposals materially and adversely affected the interests of creditors and were not fair, feasible, and equitable. Since the trustee's plan had not been assented to by at least two-thirds of the claims of any class of creditors affected by such plan, as required by Bankruptcy Act, § 179, 11 U.S.C.A. § 579, the District Court resorted to the provision of that plan for the protection of the nonassenting classes under Bankruptcy Act, § 216(7), 11 U.S.C.A. § 616(7), by offering the property dealt with by the plan for sale at the upset price of $525,000. There being no other bids at the public auction, the District Court authorized the trustee to proceed with the contract of sale with Trompeter and confirmed the plan.

■ Appellants contend that the District Court denied them a full, fair, and adequate opportunity to be heard in support of their objections to confirmation of the trustee's plan and in support of their proposals modifying the same into their plan. They further contend that the District Court erred in denying them leave to file their plan, and forcing them to state their proposals by way of objections. The court, however, was clearly correct in denying them the right to file a plan at the confirmation hearing. The Bankruptcy Act, § 169, provides that a trustee shall prepare and file a plan and that there shall be a hearing on such plan and for the consideration of any objections or of such amendments or other plans as may be proposed. Only after such a hearing has been held may such a plan be approved under Bankruptcy Act, § 174. Since there is no similar provision for submission or filing of any other plan subsequent to approval, at least not until after ultimate disposition of the approved plan, it follows that the time for offering substitute plans expired with approval of the trustee's plan; and proposals offered thereafter could be only in the nature of a modification of such approved plan. Bankruptcy Act, § 222.

■ Appellants' proposals filed by way of objections, however, differed so greatly from the trustee's plan that they could not possibly be treated as a mere modification. In providing for the transfer of debtor's property to a new corporation, and the extinguishment of a great number of claims in exchange for shares in that corporation, as a substitute for the trustee's proposed outright sale and full cash payment of all the claims, appellants' proposals clearly constituted a newly proposed plan, which could not be offered at this late stage of the proceedings. Downtown Inv. Ass'n v. Boston Metropolitan Bldgs., 1 Cir., 81 F.2d 314, 321. Upon ascertaining this fact, the District Court was not required to listen to further arguments on the merits of the proposals, and hence committed no error in denying appellants further opportunity to be heard.[2]

---

[2] Even if the appellants' proposals were to be accepted as mere modifications of the trustee's plan, they were not timely under the circumstances of this case.

Appellants further urge that the plan should not have been confirmed, since it lacked the assent of a two-thirds majority of any class of creditors. This was due largely to the fact that appellants had purchased more than one-third of the amount of claims of each of the two classes of creditors affected by the trustee's plan. There is also some showing by the trustee that the necessary two-thirds majority would have been obtained if certain oral acceptances had been counted, or some of appellants' claims disqualified by the court below. But the question can be disposed of without consideration of these matters. Under Bankruptcy Act, § 179, no acceptance need be obtained from a class of creditors or stockholders "for whom payment or protection has been provided as prescribed in" § 216(7, 8). See 3 Gerdes on Corporate Reorganizations, 1936, § 1113. The trustee's plan contained a provision for the sale of the property at not less than the $525,000 upset price, which, as we have seen, was the accepted fair value of the property, and for a transfer of the nonassenting creditors' claims to the proceeds. Since the nonassenting creditors were thus adequately protected under the trustee's plan, their assent did not constitute a necessary prerequisite to confirmation. Nor does it make any difference that no actual bid was forthcoming at the auction sale. The trustee's plan gave the nonassenting creditors the opportunity the Bankruptcy Act requires. The fact that they either did not wish to or could not take advantage of this opportunity is immaterial.

Appellants also contend that the trustee's plan could not be confirmed in reorganization proceedings, because it was in reality not a plan of reorganization, but only a means of effecting the complete liquidation of the debtor's property, within the condemnation of Fidelity Assurance Ass'n v. Sims, 318 U.S. 608, 63 S.Ct. 807, 87 L.Ed. 1032. That case, however, held merely that a petition is not filed in good faith where liquidation, and not a readjustment of the rights of creditors, was at the very outset the only outcome to be expected. There the petition was attacked for lack of good faith in the initial stages of the proceeding, and the Court held that a proceeding could not be instituted under Chapter X where there was no chance of reorganization. Here when the petition was filed it did not appear that the debtor had no chance for reorganization or that reorganization would not be a reasonable method of serving the best interests of creditors and stockholders. The District Court found that the petition was filed in good faith, and that order was never appealed from. It cannot now be attacked for lack of jurisdiction. Bankruptcy Act, § 149. The course of proceedings indicates also the good faith of the attempts to reorganize. One plan, indeed, was well on its way to being made effective as early as 1942. Only because of the completion of the buildings and the refinancing of the corporate indebtedness during the course of administration did liquidation become the more desirable method of winding up the debtor's estate.

Under these circumstances Fidelity Assurance Ass'n v. Sims, supra, does not apply, and the trustee's plan was properly approved and confirmed by the District Court as being within the language of Bankruptcy Act, § 216(10), which provides that a plan of reorganization may include the sale of all or any part of the debtor's property at a fair upset price and the distribution of all or any assets among those having an interest therein. This conclusion is amply supported by our own decisions and those of other courts. In re V. Loewer's Gambrinus Brewery Co., 2 Cir., 141 F.2d 747; In re Lorraine Castle Apartments Bldg. Corp., D.C.N.D.Ill., 53 F.Supp. 994. See also In re Central Funding Corp., 2 Cir., 75 F.2d 256, and In re Porto Rican American Tobacco Co., 2 Cir., 112 F.2d 655, both of which were distinguished and not disapproved in Fidelity Assurance Ass'n v. Sims, supra.

The order of confirmation of the trustee's plan is affirmed.

Since the purchase contract upon which the trustee's plan was based rested on a definite time limitation, and the delay in hearing appellants further would have upset a desirable plan, the court was justified in refusing such delay. Cf. In re Eldridge Brewing Co., D.C.N.H., 26 F.Supp. 920. See also Rogers v. Consolidated Rock Products Co., 9 Cir., 114 F.2d 108, where the court held that a proposal for changes and modification in the plan submitted after approval and two weeks prior to confirmation was not timely and was not entitled to confirmation.