**In re Darrell Wayne PIEPER, Soc. Sec. # 504–50–1004 d/b/a DeLux Motel Emp. Id. # 46–0342117, Debtor.**

**Bankruptcy No. BK78–40211.**

United States Bankruptcy Court, D. South Dakota.

June 6, 1980.

9. Senate Report No. 95–989, 95th Cong.2d Sess. (1978) 13.

J. Bruce Blake, Sioux Falls, S.D., for Debtor.

Robert E. Hayes, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S.D., for Dennis E. Severson, Dorothy M. Severson and Wayne O. Chase, Class II Creditors.

Merle A. Johnson, Woods, Fuller, Shultz & Smith, Sioux Falls, S.D., for Nancy K. Richardson, Class III Creditor.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

Roger D. Pieper, the state appointed Guardian of the Person and Estate of Darrell Wayne Pieper, filed on behalf of Darrell Wayne Pieper a Chapter XII Petition on September 8, 1978. Darrell Wayne Pieper, Debtor, suffers from a drug and alcohol problem and is legally incompetent. With this in mind, the Court, throughout these proceedings, has attempted to protect the business interests of the Debtor.

Debtor has presented a proposed Plan of Arrangement to this Court. The issues dealt with in this decision revolve around the main question of whether this Court should confirm Debtor's proposed Plan of Arrangement.

## FACTS

Debtor's proposed Plan of Arrangement divides the creditors into five classes, which are as follows:

## "ARTICLE III.

## DIVISION OF THE CREDITORS INTO CLASSES

The creditors of the Debtor shall consist of the following classes:

A. Class I—Northwestern National Bank of Sioux Falls, as Trustee of the Matie E. Peterson trust.

B. Class II—Dennis E. Severson, Dorothy M. Severson and Wayne O. Chase.

C. Class III—Leon T. Richardson and Nancy K. Richardson.

D. Class IV—Dakota Home Services.

E. Class V—All of the remaining general unsecured creditors of Debtor."

The real estate dealt with by Debtor's proposed Plan is the property commonly known as the DeLux Motel; located at 1712 West 12th Street, Sioux Falls, South Dakota. A Court appointed appraiser set the present reasonable fair market value of the commercial property at $142,000.00.

On May 3, 1972, the Class I Creditor, Northwestern National Bank of Sioux Falls as Trustee of the Matie E. Peterson trust, sold the DeLux Motel by Contract for Deed to the Class II Creditors, Dennis E. Severson, Dorothy M. Severson and Wayne O. Chase, for the sum of $105,000.00. The Class II Creditors agreed to pay $2,500.00 down and make a monthly payment of $675.00 until September 1, 1987, when the entire balance remaining would become due and payable.

The Class II Creditors, on May 15, 1974, sold the property by Contract for Deed to the Class III Creditors, Leon T. Richardson and Nancy K. Richardson, for the sum of $125,000.00. The Class III Creditors agreed to pay $5,000.00 down and make a monthly payment of $675.00 until September 1, 1987, when the entire balance remaining would become due and payable.

On July 13, 1977, the Class III Creditors sold the property by Contract for Deed to Debtor for the sum of $180,000.00. Debtor agreed to pay $50,000.00 down and make a monthly payment of $1,150.00 until September 1, 1987, when the entire balance remaining would become due and payable. All payments required by Debtor under the Contract for Deed are current and paid up to date.

Debtor's proposed Plan of Arrangement further provides in Article I that all allowed priority claims and administration costs and expenses will be paid off in full in cash after confirmation of the Plan.

Debtor also proposes in Article V to sell the commercial property known as the De-Lux Motel to Dakota Land Corporation, hereinafter known as Buyer. Under the proposed Plan of Arrangement Buyer will assume the outstanding Contract for Deed between Debtor and the Class III Creditors, which has a present balance of about $126,000.00. Buyer is to make the monthly payments due under the Contract for Deed to First Northwestern Trust of South Dakota, which will disburse the money to the vendees as provided for in the three Contracts for Deeds.

Further, Debtor's Plan of Arrangement proposes in Article V that, in addition to any cash accumulated in the operation of the motel, Buyer would make a further cash deposit with First Northwestern Trust of South Dakota in a sum sufficient to:

| | | |
|---|---|---|
| (a) | Pay the Clerk of Courts deposit fee of about | $ 500.00 |
| (b) | Satisfy the Internal Revenue Service levy of about | 4,500.00 |
| (c) | Satisfy the delinquent tax collector of Minnehaha County levy of about | 700.00 |
| (d) | Satisfy the Department of Revenue, State of South Dakota, sales tax delinquency of about | 3,500.00 |
| (e) | Satisfy the Employment Security Department, Unemployment Tax Division, State of South Dakota of about | 600.00 |
| (f) | Satisfy any other liens or encumbrances against the realty, if any. | |
| (g) | Pay all assessed and due personal and real estate taxes due Minnehaha County, South Dakota. | |
| (h) | Satisfy the expenses of administration of the Chapter XII estate of about | 3,500.00 |
| (i) | Satisfy the Class IV creditor. | |
| (j) | Class V Creditors—Buyer would deposit a further additional cash sum sufficient to pay a five per cent cash dividend to Class V Creditors scheduled herein, or creditors of such class who filed Proofs of Claims which are allowed herein. | |
| (k) | Pay all costs and fees in connection with this real estate transaction. | |

Finally, the Debtor's Plan of Arrangement proposes in Article II that the Court shall retain jurisdiction until the completion of the Plan.

The Class V Creditors, which are the remaining general creditors, accepted the Plan of Arrangement by a majority in numbers and amounts. Under Debtor's Plan of

Arrangement the Class V Creditors will receive more than they would in liquidation.

The Class I, II, and III Creditors rejected Debtor's Plan of Arrangement. The Class II Creditors filed written Objections to the Confirmation of Debtor's Plan and a Motion for modification of the Debtor's Plan.

This Court held numerous hearings on whether Debtor's Plan of Arrangement should be confirmed. At the hearings Counsel presented facts that may be of some importance.

Jerry and Pat Rohl are the owners of Dakota Land Corporation, Buyer. Buyer, incorporated in July of 1978, has as its officers, Jerry Rohl as President, Attorney Keith Strange as Vice President, and Pat Rohl as Secretary-Treasurer. There are no other employees. The Corporation's business is to buy, maintain and rent realty. Presently Buyer is making the monthly payments on the Contract for Deed.

The officers of Buyer are also the officers of the Class IV Creditor, Dakota Home Services. The stockholders of Dakota Home Services are Eli Rohl, Gary Rohl and Roger Rohl. All the stockholders are minor children of Jerry Rohl. Jerry Rohl is the legal guardian of the children and, in effect, runs the business. Presently, Dakota Home Services has loans to Buyer in the amount of $30,000.00. Dakota Home Services also has $78,000.00 owing on other contracts.

Presently Pat Rohl manages and operates the realty subject to these proceedings. She handles all management, repairs, bookkeeping, etc. According to her the motel is in good physical condition. However, several creditors testified that the motel was run down.

### ISSUES

As mentioned earlier, the main issue presented to this Bankruptcy Court for resolution is whether the Court should confirm Debtor's Plan of Arrangement. In answering that question it is necessary for the Court to resolve the following six (6) sub-issues: (1) Whether a Chapter XII debtor may provide in his plan of arrangement for liquidation of all his assets; (2) Whether a secured creditor who rejects a debtor's plan of arrangement is materially and adversely affected by a plan that provides that a party substituted for the debtor, and allowed to assume a Contract for Deed, will pay the secured creditor exactly what the secured creditor bargained for under the Contract for Deed; (3) Whether Debtor's Plan of Arrangement provides adequate protection to any affected secured creditor so as to allow the Court to invoke the cram-down provisions of Section 461(11) of the Bankruptcy Act, 11 U.S.C. Section 861(11); (4) Whether Debtor proposed his Plan of Arrangement in good faith; (5) Whether Debtor's Plan of Arrangement is in the best interests of the creditors; and (6) Whether Debtor's Plan of Arrangement is feasible.

### (1) LIQUIDATION OF ALL ASSETS BY CHAPTER XII DEBTOR

■ Creditors have raised the issue of whether a Chapter XII Debtor may provide in his plan of arrangement for liquidation of all of his assets. Under Debtor's Plan of Arrangement Buyer would assume the Contract for Deed between Debtor and the Class III Creditors. As a result there is no real property remaining in the Debtor's estate in which Debtor would have anything more than a nominal interest.

■ The Court recognizes that the purpose of Chapter XII was meant to allow a debtor to continue in possession and ownership of his assets while paying off his debts. But, in this particular case, where Debtor has an appointed guardian and is legally incompetent, such a proposal would not be feasible. Although Debtor's Attorney has proposed a plan whereby Debtor will sell the DeLux Motel, Debtor's priority and secured debts will *all* be paid.

This Court holds that a Chapter XII debtor may provide in his plan of arrangement for the liquidation of all of his assets. In so holding the Court relies upon Section 461 of the Bankruptcy Act, 11 U.S.C. Section 861, which reads as follows:

"An arrangement—

(12) shall provide adequate means for the execution of the arrangement, which may include: the retention by the debtor of all or any part of his property; *the sale or transfer of all or any part of his property* in trust or *to one or more corporations theretofore organized* or thereafter to be organized; *the sale of all or any part of his property, either subject to or free from any lien*, at not less than a fair upset price and the distribution of all or any assets, or the proceeds derived from the sale thereof, among those having an interest therein; . . . ." (Emphasis Added.)

The provisions of Section 461(12) of the Bankruptcy Act clearly contemplate that indeed a debtor can provide in his plan of arrangement for liquidation of all of his assets. Counsel have not cited any case or statute that would indicate otherwise. Debtor in his Plan of Arrangement may provide for the sale of the DeLux Motel to Buyer.

### (2) ARE THE SECURED CREDITORS MATERIALLY AND ADVERSELY AFFECTED

The second issue presented to this Court for resolution is whether a secured creditor who rejects a debtor's plan of arrangement is materially and adversely affected by a plan that provides that a party substituted for the debtor, and allowed to assume a Contract for Deed, will pay the secured creditor exactly what the secured creditor bargained for under the Contract for Deed.

Section 461(2) of the Bankruptcy Act, 11 U.S.C. Section 861(2) requires that:

"An arrangement—

(2) shall provide for the rights of all other creditors of a debtor who may be affected by the arrangement."

In order to know when a creditor may be affected by an arrangement, reference must be made to Section 407 of the Bankruptcy Act, 11 U.S.C. Section 807, which reads as follows:

"Creditors or any class thereof shall be deemed to be 'affected' by an arrangement only if their or its interest shall be materially and adversely affected thereby."

The effect of these two provisions, plus other applicable provisions of the Bankruptcy Act, is that a creditor who is not affected by an arrangement is not entitled to vote on the acceptance or rejection of the arrangement. On the other hand, Section 461(2) requires a debtor to provide adequate protection to all creditors who are "affected" and do not accept the arrangement.

This Court holds that the Class I, II, and III Creditors are not affected by Debtor's Plan of Arrangement since the creditors are to receive under the contracts for deeds exactly what they bargained for, that is, installment payments for a fixed term of years at a fixed rate of interest with a balloon payment at a fixed determinable time, all in accord with sale terms previously established by each of them.

The Court further holds that the substitution of Buyer for Debtor, as the one who will be making the payments, does not materially and adversely affect the creditors. Rather, such a substitution meets the requirements of Section 406(1) and Section 461(1), which require a plan of arrangement to have as its primary purpose the alteration or modification of the rights of creditors who hold debts secured by real property or a chattel real of the debtor. Here, the primary purpose of Debtor's Plan of Arrangement is to modify the Contract for Deed so as to allow Buyer to assume the Contract for Deed. The Court would note and point out to Counsel that there is no requirement under Section 406(1) or 461(1) of the Bankruptcy Act, that the modification or alteration of the creditor's rights be material or adverse to that creditor's interest.

The Creditors urged this Court to follow the rationale set out in *Continental Insurance Co. v. Louisiana Oil Corp.*, 89 F.2d 333 (5 Cir. 1937). In *Continental* the debtor had filed a petition for a corporate reorganization under Bankruptcy Act Section 77B, 11

U.S.C. Section 207. The plan of reorganization provided that another corporation would: (1) acquire all the assets of the debtor; (2) assume and pay all debtor's debts as they matured; (3) issue to the debtor's preferred stockholders one share of the new corporation stock in exchange for two shares of debtor's stock; and (4) pay debtor's common stockholders ten cents per share.

In *Continental*, the Court addressed the question of whether the plan modified or altered the rights of creditors as required by Section 77B so as to allow the court to confirm the plan. The Court in *Continental* stated that:

> "It is further contended that the plan is not within the bankruptcy power because it does not alter the rights of creditors but serves only to readjust stock ownerships. A plan which does not propose at all to change the position of creditors, if within the federal bankruptcy power, is not within section 77B. The first requisite of a plan as fixed by paragraph (b) is that it 'shall include provisions modifying or altering the rights of creditors generally, or of any class of them, secured or unsecured, either through the issuance of new securities of any character or otherwise.' 11 U.S.C.A. Section 207(b). We think the rights of all creditors are modified and altered here because, while they are to be paid in full as their debts mature, the court is not to pay them, but a new debtor, the Arkansas Fuel Oil Company, is to assume them. The substitution of a new debtor, although solvent, is a fundamental alteration of a creditor's rights." At 336.

Both Bankruptcy Act Section 77B and the newer Chapter XII proceedings require that an arrangement modify or alter the rights of creditors. This Bankruptcy Court agrees with the holding in *Continental* that substitution of another party for the debtor does modify or alter the rights of the creditors, as required by Section 77B or Section 461(1) and Section 406(1) of the Bankruptcy Act, in order that a plan of arrangement may be confirmed. However, this Court does not feel that the holding in *Continental* can be applied to the issue of whether such a substitution materially and adversely affects the creditors.

In *Continental*, by the very essence of the type of reorganization that was involved, all the creditors were materially and adversely affected. The Court's statement in *Continental* that, "The substitution of a new debtor, although solvent, is a fundamental alteration of a creditor's rights," should not be taken out of context and made to stand for the proposition that substitution of a party for the debtor does materially and adversely affect a creditor.

*Continental*, decided in 1937, pre-dated the Chandler Act which substantially modified the Bankruptcy Act of 1898. Further, in the past forty (40) years numerous changes have occurred in the area of bankruptcy law. To hold that the unclear statement by the Court in *Continental* is controlling on the issue of whether the creditors are materially and adversely affected would be ludicrous. This Court will not apply the holding in *Continental* to the issue of whether the secured creditors are materially and adversely affected.

As mentioned earlier, this Court holds that the Class I, II, and III Creditors are not affected by Debtor's Plan of Arrangement since they receive under the Contracts for Deeds exactly what they bargained for. Also, equity in this case justifies a finding that substituting Buyer for Debtor does not materially and adversely affect the creditors.

Here, Debtor is legally incompetent and is represented in court by his guardian, Roger Pieper. If this Court did not allow the substitution and required Debtor to remain in possession and ownership, any proposed plan of arrangement would by necessity have to contemplate that all performance and business decisions would be made by the guardian. Thus, for all practical purposes, Roger Pieper would remain in command of the business and probably Pat Rohl would continue in managing the De-Lux Motel. In such a situation the creditors would only have the satisfaction of the

check being signed by Roger Pieper as Guardian for Debtor.

### (3) ADEQUATE PROTECTION

■ Even if this Court found that the Class I, II, and III Creditors were affected by Debtor's Plan of Arrangement, this Court would hold that Debtor's Plan of Arrangement provides adequate protection as set out in Section 461(11) of the Bankruptcy Act, 11 U.S.C. Section 861(11), which reads as follows:

"An arrangement—

(11) shall provide for any class of creditors which is affected by and does not accept the arrangement by the two-thirds majority in amount required under this chapter, adequate protection for the realization by them of the value of their debts against the property dealt with by the arrangement and affected by such debts, either, as provided in the arrangement or in the order confirming the arrangement, (a) by the transfer or sale, or by the retention by the debtor, of such property subject to such debts; or (b) by a sale of such property free of such debts, at not less than a fair upset price, and the transfer of such debts to the proceeds of such sale; or (c) by appraisal and payment in cash of the value of such debts; or (d) by such method as will, under and consistent with the circumstances of the particular case, equitably and fairly provide such protection."

Section 461(11) is commonly called the cram-down provision of Chapter XII. If adequate protection is provided for, Section 468(1) of the Bankruptcy Act, 11 U.S.C. Section 868(1), provides that the plan can be confirmed without the secured creditor's vote and over his objections. Norton, Real Property Arrangements, Part 24, Section 24–1, at page 80 (1977).

Here, the Class I, II, and III Creditors are adequately protected. Buyer is buying the DeLux Motel subject to their debts. If Buyer fails to make the payments and the plan fails, the secured creditors will have the right to foreclose on the property. Further, if the creditors feel that Buyer is letting the DeLux Motel deteriorate, they can always request a hearing.

This Bankruptcy Court holds that the Class I, II, and III Creditors are adequately protected under Debtor's Plan of Arrangement and that this Court will invoke the cram-down provisions of Section 461(11) of the Bankruptcy Act and confirm the Plan of Arrangement if all the other requirements are met.

### (4) GOOD FAITH

■ The next issue presented to this Court is whether Debtor proposed his Plan of Arrangement in good faith.

Section 472(4) of the Bankruptcy Act, 11 U.S.C. Section 872(4), requires that:

"The court shall confirm an arrangement if satisfied that—

(4) the proposal and its acceptance are in good faith and have not been made or procured by any means, promises, or acts forbidden by this title."

The Court in *In the Matter of Pickett, Gardner, Landers and Associates,* 2 Bankr. Ct.Dec. 727 (N.D.Ga.), held at 730 that "the type of good faith meant in those decisions (referring to *Sumida v. Yumen,* 409 F.2d 654 (9th Cir. 1969) and *In re Colonial Realty Investment Co.,* 516 F.2d 154 (1st Cir. 1975)), is equated to a consideration whether, after an adequate breathing period, the debtor can show that there is a reasonable chance for successful arrangement within a reasonable time." 9 Collier on Bankruptcy, (14th Ed.), Section 9.07 at page 1145, explains that:

"The meaning of "good faith" as used in Section 472(4) is not defined in the Act. Whether or not the proposal of a plan is in good faith may be determined not only from conditions existing when the petition is filed but also from subsequent acts. . . . Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose or spirit of Chapter XII in the proposal or acceptance of the plan."

The facts in this case have already been set out extensively. On the basis of those facts the Court believes that Debtor acted in good faith in proposing his Plan of Arrangement. The Court further holds that Debtor does have a reasonable chance for a successful arrangement within a reasonable time.

### (5) BEST INTERESTS OF THE CREDITORS

■ Section 472(2) of the Bankruptcy Act, 11 U.S.C. Section 872(2), requires a court to confirm an arrangement if satisfied that "it is for the best interests of creditors . . . ." The Class II Creditors filed written Objections to Confirmation of the Plan alleging that the plan is not in the best interests of the creditors since: (1) it allows a sister or related corporation to assume a contract for deed without the consent of the contract vendors and without the requirement of any downpayment; (2) there is no assurance that Buyer has the financial ability to perform the contract and if the Court does confirm the plan the Court should require a bond to insure that the contract vendors will be paid off; (3) there is no provision for a neutral third party of the bankruptcy court to inspect and insure proper management occurs; and (4) it provides for no more than a liquidation of his interests in the commercial property and thus is not a true Plan of Arrangement.

The first point raised by the creditors is inapplicable since the main purpose of a Chapter XII is to modify or alter the rights of creditors. Only "affected" creditors have the right to vote on the plan.

The second point raised by the creditors is dealt with under feasibility. The third point raised by the creditors is inapplicable since the Plan provides that the Court will retain jurisdiction. The fourth point has already been dealt with.

■ The test applied in determining whether a plan of arrangement is in the best interests of the creditors is a comparison between what the creditors would receive under the arrangement and what they would receive in liquidation. 9 Collier on Bankruptcy, (14th Ed.) Section 9.07 at page 1138. Under Debtor's Plan of Arrangement the Class I, II, and III Creditors are to receive their contract bargain, the Class IV Creditor is to be paid off, and the Class V Creditors are to receive a five per cent (5%) payment. The five per cent (5%) payment to the remaining general unsecured creditors is more than they would receive in liquidation.

Therefore, this Bankruptcy Court holds that Debtor's Plan of Arrangement is in the best interests of the creditors.

### (6) FEASIBILITY

■ The final sub-issue presented to this Court is whether Debtor's Plan of Arrangement is feasible. Section 472(2) of the Bankruptcy Act, 11 U.S.C. Section 872(2), requires a court to confirm an arrangement if satisfied that "it is . . . feasible."

9 Collier on Bankruptcy, (14th Ed.) Section 9.07 at pages 1139 and 1140 explains that:

"The test of feasibility is derived from former Section 77B, and views the probability of actual performance of the provisions of the plan. Sincerity, honesty, and willingness are not sufficient to make the plan feasible, and neither are any visionary promises. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts. That necessarily depends on the varying facts of each particular case. It refers to the probability that the creditors will receive the amount of money provided for them pursuant to the plan, and not that there is probable prospect of the debtor's future financial rehabilitation and continued business success. There should be considered the adequacy of the capital structure, the earning power of the property, economic conditions, the ability of the management, the probability of a continuation of the same management, and any other related matters which determine the prospects of sufficiently successful operation to enable

**580**

performance of the provisions of the plan." See *In the Matter of Pickett, Gardner, Landers and Associates*, 2 Bankr.Ct.Dec. 727 (N.D.Ga.1977).

In *In re Triangle Inn Associates*, 2 Bankr. Ct.Dec. 716, (E.D.Va.1977), the Court took a similar viewpoint on the issue of feasibility. The Court stated that:

"Neither the statutes nor any cases prescribe by any measure what 'feasible' is. Called a "word of art," it is established upon the facts and in the discretion of the court."

Creditors attempted but failed to prove that Buyer was in financial trouble. At a hearing on feasibility Creditors attempted to prove that Buyer was delinquent on its light and water bill. Further, Creditors brought to the Court's attention that Dakota Home Services has made substantial loans in the amount of $30,000.00 to Buyer.

After carefully reviewing the evidence, this Bankruptcy Court holds that Debtor's Plan of Arrangement is feasible since there is sufficient evidence that creditors are assured of receiving payment under Debtor's Plan of Arrangement. In so holding, this Court finds Buyer is a viable and profitable corporation with experience in managing and running such enterprises as the DeLux Motel. The Court takes judicial note that during the months this matter has been in litigation Buyer has made the monthly payments required by the Contract for Deed. Further, this Court finds that the guarantee by Dakota Home Services assures that the creditors will receive payment under the Plan.

### CONCLUSION

Based on the foregoing discussion, this Bankruptcy Court holds that Debtor's Plan of Arrangement does comply with all the provisions and requirements of Chapter XII and should be confirmed. The Plan is hereby confirmed.

Counsel for Debtor shall submit an Order consistent with the foregoing. This Memorandum Decision will constitute the Findings of Fact and Conclusions of Law.